805 So.2d 1230 (2002)
Bobby Roy HAGOOD, Plaintiff-Appellant,
v.
Billy BRAKEFIELD d/b/a Bill's Motor Company, Defendant-Appellee.
No. 35,570-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 2002.
*1231 Daniel Randolph Street, Counsel for Plaintiff-Appellant, Bobby Roy Hagood.
Robert McCuller Baldwin and Elizabeth Dawn Bogan, Counsel for Defendant-Appellee, Billy R. Brakefield.
Gregg Arthur Wilkes, Counsel for Defendants-Appellees, Shelter Ins. Co. and Doug White.
John B. Hoychick, Counsel for Defendants-Appellees, Louisiana Farm Bureau Mutual Ins. Co. and Arthur James Chapman.
Before NORRIS, BROWN and STEWART, JJ.
NORRIS, Chief Judge.
The plaintiff, Bobby Roy Hagood, cut himself while using a Stihl chainsaw belonging to Arthur James Chapman. Hagood now appeals a summary judgment that dismissed his personal injury claim against Chapman on grounds that Chapman neither knew nor should have known of any defect in the chainsaw. For the reasons expressed, we reverse and remand.

Factual and procedural background
Hagood is a laborer who has done occasional work for Chapman, sometimes at Chapman's gin in Archibald, Louisiana, and sometimes yard work and manual labor around Chapman's house. In early July 1999, Hagood and a helper were tearing down a shed on Chapman's property when Chapman's son-in-law (and next door neighbor), Doug White, asked him to trim some limbs along the common driveway. Hagood had no equipment to do this, so White told him to borrow Chapman's chainsaw. Hagood stated in deposition that he told Chapman his Stihl chainsaw *1232 was "cutting out" or missing, so Chapman told him to take the Stihl and another, a Homelite, and load them in his truck; someone else took the saws to Bill's Motor Company for service.
Chapman stated in deposition that the chain on the Stihl was "stretched," he lacked the equipment to fix it, and so he carried the saw to Bill's. Bill's owner, Billy Brakefield, stated by affidavit that Chapman only asked him to sharpen the chain to the Stihl, and he did no other work on it. Hagood, however, believed that Brakefield had tuned it up.
Hagood picked up the saws from Bill's and, a few days later, he and a helper began trimming White's trees. After several hours using White's stepladder, they began using half an extension ladder. While his helper, George Dew, was hauling some branches away, Hagood propped the six-foot extension ladder against a tree and resumed cutting. The ladder "shifted," and Hagood fell to the ground. Either during the fall or as he landed, the casing of the saw made contact with his chest. As he reached to move it away, the saw, still running, severely cut his left arm.
Hagood sued Brakefield, who had recently serviced the saw; White, on whose property the accident happened and who loaned the ladders; and Chapman, who owned the chainsaw. He alleged that the saw was unreasonably dangerous because the chain continued to spin fast even after the trigger was released.
Hagood moved for partial summary judgment to dismiss Brakefield on grounds that nobody had asked him to tune up the saw. Hagood's motion also sought a summary judgment rejecting the other defendants' right to assert third-party claims against Brakefield.
Chapman moved for summary judgment, urging that Hagood did not make the requisite "showing that he [the owner] knew or, in the exercise of reasonable care, should have known of the ruin, vice or defect which caused the damage." La. C.C. art. 2317.1. By deposition, Chapman testified that he had bought the Stihl at a pawn shop in Monroe about two years earlier; he never used it himself, but freely allowed others to use it ("everybody in the country borrows my stuff"); he was aware only that the chain was stretched or "slack," and it was hard to crank and keep running, so he sent it to Bill's for repair. Chapman also attached two of Hagood's depositions, in which he admitted using the saw about a week before the accident, but it was "cutting out" or stopping while in use; he told Chapman about this problem, but nothing else; on the date of the accident, he and his helper, George Dew, used the saw about four hours with no problems; and he did not notice that the chain kept running after the trigger was released until he fell off the ladder and got cut.
Hagood opposed the motion. In support he filed the deposition of his helper, George Dew, who stated that early on the day of the accident he noticed that the Stihl was continuing to run "pretty good, you know," but "not at high speed" after he released the trigger. Dew added that he told Hagood to turn it off completely after each use, but that he did not tell White or anybody else about this problem. Hagood also filed the affidavit of Jeremy Bartlett, another of Chapman's occasional workers who had used the Stihl on Chapman's property (he did not state when, but Hagood placed it in early 1999); he stated that the chain continued to turn "fast" after the trigger was released. Finally, Hagood filed the affidavit of an engineering expert, Dr. Leighton E. Sissom of Cookeville, Tennessee. Dr. Sissom stated that he started and tested the chainsaw, and videotaped the results. He reviewed *1233 the applicable ANSI standards, finding that the continued running of the chain after the trigger was released made the saw unreasonably dangerous. This condition resulted from irregular idling, was observable to the naked eye, and would likely have been remedied by a proper tune-up.
After a hearing on April 16, 2001, the District Court orally ruled that Hagood produced "some evidence" of a malfunction prior to the accident, but no evidence that Chapman "either knew, had been told, had watched the chain spin inappropriately or any other factors that would lead this court to believe that he either knew or should have known in the exercise of reasonable care that there was a defect in the chainsaw." With this finding, the court granted Chapman's motion. By separate judgment, the court dismissed as moot Hagood's motion for partial summary judgment against Chapman. Hagood appeals both judgments.

Discussion
The Civil Code defines the liability for damage caused by defective things in articles 2317 and 2317.1:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. * * *
Article 2317.1, enacted in 1996, effectively abrogates the concept of "strict liability" in cases involving defective things and imposes a negligence standard based on the owner or custodian's knowledge or constructive knowledge of the defect. Lasyone v. Kansas City Southern R., 00-2628 (La.4/3/01), 786 So.2d 682, at fn. 9; Frank L. Maraist & Thomas C. Gallagan Jr., Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 Tulane L.Rev. 339, 344-350 (1996). Although article 2317.1's requirement of constructive knowledge cannot be construed so broadly as to revive the regime of strict liability, it does impose a reasonable duty to discover apparent defects in things under the defendant's garde. Myers v. Dronet, 01-5 (La.App. 3 Cir. 6/22/01), 801 So.2d 1097; Walters v. Kenner CiCi's, 00-1372 (La.App. 5 Cir. 1/23/01), 780 So.2d 467.
A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966 B. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of all except certain disallowed actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. The burden of proof remains with the movant; however, if the movant will not bear the burden of proof at trial on the matter before the court on motion for summary judgment, then the movant may merely point out to the court that there is an absence of factual support for one or more elements essential to the plaintiffs claim. The burden then shifts to the non-moving *1234 party to present evidence demonstrating that genuine issues of material fact remain. La. C.C.P. art. 966 C(2); Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied 97-0281 (La.3/14/97), 690 So.2d 41. Appellant review of a grant or denial of summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226. Notably, "when the party opposing the summary judgment submits expert opinion evidence that would be admissible and that is sufficient to allow a reasonable juror to conclude the expert's opinion on a material fact more likely than not is true, the court should deny the summary judgment motion." Id.; Willis v. Medders, 00-2507 (La.12/8/00), 775 So.2d 1049.
The parties concede that Chapman was the owner and custodian of the chainsaw that injured Hagood, and that there was no proof of Chapman's actual knowledge of its tendency to keep running after the trigger was released. The only issue is whether Chapman should have known of this condition. The District Court aptly noted that Hagood produced some evidence of a malfunction prior to the accident. However, the court found no constructive knowledge, apparently because Hagood himself used the saw some four hours before the accident without noting the particular defect that allegedly caused his own injuries. R.p. 322.
On de novo review of this record, we are constrained to find that Hagood has presented some evidence to support a finding of Chapman's constructive knowledge of the defect. Dr. Sissom's affidavit establishes that he examined the Stihl chainsaw, finding that its "engine idled erratically causing the chain to sometimes continue to run when the trigger was released," and that "the propensity of the chain to continue running intermittently when the engine is idling is observable to the naked eye." This expert opinion regarding an apparent defect is, in our view, "sufficient to allow a reasonable juror to conclude the expert's opinion on a material fact is more likely than not true." Willis v. Medders, supra. The deposition of George Dew and affidavit of Jeremy Bartlett provide further factual support for the conclusion that defect was apparent. Moreover, Chapman stated that he freely allowed many people to use or borrow his equipment, and from these people he learned that the Stihl chainsaw had mechanical problems. On this evidence a fact finder could conclude that Chapman owed a reasonable duty to discover defects in the chainsaw, Walters v. Kenner CiCi's, supra, and to remedy the defects or prevent other people from using the saw. This evidence creates a genuine issue of material fact as to whether, given his knowledge of the saw's various mechanical problems and his habit of loaning it freely, Chapman exercised reasonable care in failing to discover and remedy the particular defect noted by Dr. Sissom. In short, we find sufficient evidence to warrant a trial on the issue of constructive knowledge. The judgment will be reversed and the case remanded accordingly.
By his second assignment, Hagood urges that should this court reverse Chapman's summary judgment, it should grant Hagood's motion for partial summary judgment, in effect to prevent any other party from asserting fault against Brakefield, the dismissed defendant.[1] In support, Hagood cited Brakefield's affidavit stating that Chapman asked him only to *1235 sharpen the chain to the Stihl, and that was the only work performed; Hagood and Brakefield both argued to the District Court that this was not sufficient to establish a breach of duty.
Chapman's answer does not plead the affirmative defense of third party fault; he has filed no cross claim against Brakefield; and in brief he reiterates that he has never asserted any fault against Brakefield. For these reasons, he considers the matter irrelevant and does not oppose the motion. The other defendant, Doug White, has filed an answer that is not included in the appellate record.[2]
On the instant record, no party has offered any summary judgment evidence to create a genuine issue of material fact as to Brakefield's liability. We will grant the motion for partial summary judgment.

Conclusion
For the reasons expressed, the summary judgment in favor of Arthur James Chapman and his insurer, Louisiana Farm Bureau Mutual Insurance Co., is reversed and the case remanded for further proceedings. The motion for partial summary judgment in favor of the plaintiff, Bobby Roy Hagood, rejecting the other defendants' right to assert third party claims against the dismissed defendant, Billy Brakefield, d/b/a Bill's Motor Company, is granted. Costs are assessed to appellees, Chapman and Farm Bureau.
REVERSED AND REMANDED.
NOTES
[1] Brakefield also filed a motion for summary judgment, seeking dismissal from the case; Hagood did not designate this motion as part of the appellate record. R.p. 309-A
[2] According to Hagood, White and his insurer, Shelter General Inc. Co., specifically pled Brakefield's fault in their answer, but Hagood did not designate White's answer as part of the appellate record.