974 So.2d 835 (2008)
Cletis THOMPSON, Plaintiff-Appellant,
v.
NELON'S FAST FOODS, INC., Holland Foods, Inc., Valley Forge Insurance Company and Tina McGlothen, Defendants-Appellees.
No. 42,825-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 2008.
*836 The Young Firm by Timothy Justin Young, Robert J. Young, Jr., Robin Richmond Klibert, Jason C. MacFetters, New Orleans, for Appellant.
Mayer, Smith & Roberts, L.L.P. by David Finley Butterfield, Shreveport, for Appellees.
Before WILLIAMS, STEWART and DREW, JJ.
DREW, J.
Cletis Thompson filed suit alleging that she was injured when a wooden restaurant chair collapsed under her while she was eating lunch. The incident occurred on July 18, 2004, at a Kentucky Fried Chicken ("KFC") restaurant in Minden. Thompson named as defendants Nelon's Fast Foods, Inc; Holland Foods, Inc., a KFC franchisee and a subsidiary of Nelon's; Valley Forge Insurance Company; and Tina McGlothen, who was the assistant manager of the restaurant.
Filing a motion for summary judgment, the defendants contended that there was no evidence that there was improper maintenance of the chair or that they knew or should have known that the chair was going to collapse. The trial court granted the motion and dismissed the suit. Thompson has appealed.

DISCUSSION
A motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
The law governing Thompson's negligence claim is set forth in La. C.C. art. 2317.1, which provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
In order to recover under this article, Thompson was required to establish that the chair was in the defendants' custody, that the chair contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused the damage, and that the defendants knew or should have known of the defect. See Birdsong v. Hirsch Memorial Coliseum, 42,316 (La.App.2d Cir.8/22/07), 963 So.2d 1095.
As this court has noted, since the enactment of La. C.C. art. 2317.1 in 1996:
[T]he concept of "strict liability" for defective things has been eviscerated and has been replaced with a burden of proof identical to that used in negligence claims requiring that the owner or custodian of the defective thing have actual or constructive knowledge of the defect. The concept of constructive knowledge *837 imposes a reasonable duty to discover apparent defects in things under the defendant's garde. Hagood v. Brakefield, 35,570 (La.App.2d Cir.1/23/02), 805 So.2d 1230, writ denied, 02-0557 (La.4/26/02), 815 So.2d 90.
Johnson v. Entergy Corp., 36,323, pp. 4-5 (La.App.2d Cir.9/20/02), 827 So.2d 1234, 1237-8.
Thompson argues on appeal that the trial court erred in granting the motion for summary judgment because a genuine issue of material fact exists regarding defendants' knowledge of a defect in the chair. Thompson concedes that defendants did not have actual knowledge of the defect, leaving the issue of whether defendants had constructive knowledge of the defect.
The chair that collapsed was not available for examination after suit was filed. It was kept in McGlothen's office for several months, moved to a supply room, and then eventually discarded. A photocopy of a chair identical to the chair at issue was attached to McGlothen's affidavit. However, the unavailability of the chair is of no significance as we assume for purposes of our review of this judgment that the chair was defective and focus on the element of knowledge of the defect. See Lewis v. Albertson's Inc., 41,234 (La.App.2d Cir.6/28/06), 935 So.2d 771, writ denied, XXXX-XXXX (La.11/9/06), 941 So.2d 42, where the accidental disposal of a collapsed lawn chair by defendant was not an obstacle to granting a motion for summary judgment on a product liability claim when the issue was whether defendant had knowledge of an alleged defect in the chair.[1]
Thompson testified at her deposition that after the incident, she heard an employee say that it looked like a screw had come loose in the front part of the chair. Her husband testified that the wood chair was in three parts after the incident, and he saw broken wood. When asked during her deposition to describe the broken chair, McGlothen stated: "A connective piece from the back of the chair had broken off into the front piece of the chair." McGlothen did not think the chair had broken into pieces, rather only that the connector piece had broken. She did not find any screws, nails, or other materials on the ground after the incident.
Beth Ponder, an administrative employee for Nelon's Fast Foods, stated in her affidavit that in August of 1990, Holland ordered 54 chairs from KFC for use at the Minden restaurant. Ponder also stated that a search of Nelon's and Holland's records from before the accident did not show repairs to any of the chairs in any of the KFC restaurants operated by them, or that any chairs at any of the restaurants had to be removed from service. McGlothen, who began working for KFC in 1980 and has been an assistant manager since 1991, stated in her affidavit that she had no recollection of having to remove any of the restaurant's chairs from service, or any chair there needing any repairs, prior to the incident. McGlothen also stated that there were no other instances of chairs collapsing at the restaurant.
Thompson testified that she placed her order and then sat in the chair. She remained at the table while her husband got their drinks and picked up their order. When Thompson pulled the chair out to sit on it, nothing about the chair suggested that it was defective. She stated that there was no way for a restaurant employee to know the chair was not capable of supporting a customer's weight. The chair made a creaking noise as she sat on it, but *838 she did not think the creaking noise indicated that the chair could not support her, and there was no forewarning that the chair was going to break.
McGlothen explained that the restaurant had a verbal policy for inspecting the dining area furniture. The employees moved the chairs and tables as they cleaned the dining area, and they were instructed to report any problems with the furniture. In addition, the managers were required to inspect the furniture. Each Friday, a detailed cleaning of the dining area was performed, and during this process, the chairs were placed upside-down on the tables. The employees were told that if they found something wrong with a chair when performing the detailed cleaning, they were to alert the manager. No employees brought problems with the chairs to her attention before the incident.
Much has been made by Thompson that many of the KFC employees were teenagers making minimum wage. However, it would require little, more than the knowledge possessed by the average person to be able to discern an apparent defect in a chair, an object used by most people in this country on any given day. KFC's verbal inspection policy relative to the dining area equipment was reasonable. When she sat on the chair, Thompson herself noted no defect in it. The chair later gave way, but this record does not support plaintiff's contention that defendants knew or should have known of its structural problem.

CONCLUSION
We find no error in the granting of defendants' motion for summary judgment. At appellant's costs, the judgment is AFFIRMED.
NOTES
[1] In Lewis, the plaintiff amended her petition to assert a claim of spoliation of evidence.