GASKINS, J.
|2The plaintiff, Julia Nicholson, appeals from a trial court ruling granting a motion for summary judgment on behalf of Horseshoe Entertainment, Louisiana Partnership (“Horseshoe”) and dismissing the plaintiffs claim for damages arising from personal injury. For the following reasons, we affirm the trial court judgment.
*567 FACTS
On October 9, 2004, between 8:00 and 9:80 p.m., the plaintiff rode Escalator # 5 at Horseshoe along with her husband, Darryl Nicholson, and a family friend, Gary Anderson. The plaintiff claims that when she neared the top of the escalator, it jerked suddenly, causing her to fall approximately 10 to 12 steps, from the top to the bottom. The plaintiff alleged that she suffered injuries to her right elbow, right shoulder, and lower back.
The plaintiff filed suit against Horseshoe, claiming that the defendant knew or should have known of the defective condition of the escalator and failed to correct it. She asserted that Horseshoe was negligent in numerous respects, including failing to provide a safe escalator and failing to warn of the defects. She sought to recover damages for pain and suffering, medical expenses, mental anguish and distress, lost wages, and loss of enjoyment of life.
The defendant answered with a general denial and asserted comparative negligence on the part of the plaintiff. The parties commenced discovery. In answers to interrogatories, Ms. Nicholson stated that when she fell, she experienced a jerking of the escalator. She thought someone might have jumped on the escalator, causing it to jerk. She stated, “I turned to the young man who had [come] with us and next thing I know I was falling and seemed I could not get up.” Ms. Nicholson said in her deposition that she was two steps from getting off the escalator when it jerked, causing her to fall. However, in her deposition, she claimed that she had not turned to talk to anyone at the time she fell.
The plaintiffs husband, Darryl Nicholson, stated in his deposition that the escalator jerked and his wife went sailing by him and Mr. Anderson. He said that his wife had not turned around to talk to him and that no one else on the escalator fell.
[¡¡Horseshoe had a maintenance agreement with ThyssenKrupp Elevator to service the escalators twice a month. Jay Jordan, the technician with ThyssenKrupp who usually performed the service on Escalator # 5, gave an affidavit stating that the company had not received any complaints about the escalator jerking. Prior repairs to the escalator included adjustment and replacement of comb plates, replacement of handrail tension springs and a handrail speed sensor device, and adjustment of the step chain switch. According to Mr. Jordan, none of the items serviced would cause the escalator to jerk. He stated that any jerking motion of an escalator would cause the escalator to automatically stop. Routine maintenance was performed on Escalator # 5 on October 4, 2004, five days before the accident, and no defects or problems were found. Service records for Escalator # 5 were attached to Mr. Jordan’s affidavit.
Horseshoe also produced the video of the accident at issue in this matter. Also, in response to the plaintiffs discovery request, Horseshoe produced incident reports concerning Escalator # 5 for January through September 2004 which showed the following:
• January 6, 2004 — Guest got tired and sat down on floor after getting off Escalator # 5
• May 9, 2004 — Guest’s knee gave out and she fell
• June 3, 2004 — Guest lost balance and fell backward
• June 9, 2004 — Guest missed step and fell
• July 18, 2004 — Guest got dizzy and fell backward
• August 7, 2004 — Guest lost balance
*568 • August 7, 2004 — Guest fell when toe caught on the teeth of the step in front of him
• August 9, 2004 — Guest rode up escalator on hand rail and got leg stuck between escalator and wall
• September 14, 2004 — Guest hit arm on hand rail of escalator
Horseshoe filed a motion for summary-judgment on March 2, 2010, asserting that the plaintiff could not prove the existence of a defect or knowledge or notice of a defect in the escalator by Horseshoe. The defendant maintained that there was no evidence that the escalator jerked, |4that it had a defect which would cause it to jerk, or that Horseshoe knew or should have known of such a defect. Horseshoe pointed out that no one else on the escalator at the time of the plaintiffs accident fell. According to Horseshoe, other instances where people fell on Escalator # 5 were shown to be caused by patron error.
The plaintiff filed an opposition to the motion for summary judgment, claiming that numerous issues of material fact existed in this matter. The plaintiff claimed that there was a disputed issue of material fact as to whether the escalator contained a dangerous heavy jerking defect on the date of the accident which caused the plaintiff to fall, whether Horseshoe knew or should have known of the defect and failed to remedy it, and whether the plaintiff suffered injuries or damages as a result of the escalator accident.
The motion for summary judgment was submitted on briefs. The trial court issued an opinion finding that summary judgment should be granted in favor of Horseshoe. The trial court noted that discovery in this case had been ongoing for five years and that the deposition testimony of the plaintiff and her husband alone was not sufficient to establish that the escalator contained a defect creating an unreasonable risk of harm or that Horseshoe knew or should have known of such a defect. Because the plaintiff failed to establish these essential elements of her claim, the trial court found that Horseshoe was entitled to summary judgment. A judgment to that effect was signed by the trial court. The plaintiff appealed.
MOTION FOR SUMMARY JUDGMENT
On appeal, the plaintiff claims that the trial court erred in granting Horseshoe’s motion for summary judgment, holding that the plaintiff could not satisfy all of the elements of her claim. This argument is without merit.
Legal Principles
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, 2003-1146 (La.1/21/04), 864 So.2d 129. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. King v. Illinois National Insurance Company, 2008-1491 (La.4/3/09), 9 So.3d 780; Baker v. Knapp, 45,404 (La.App.2d Cir.6/23/10), 42 So.3d 1044, writ denied, 2010-2073 (La.11/12/10), 49 So.3d 895. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). A motion for summary judgment shall be granted if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Supporting and opposing affidavits shall be *569 made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Beneficial Louisiana, Inc. v. Nash, 45,686 (La.App.2d Cir.11/3/10), 55 So.3d 803.
The moving party bears the burden of proof. However, when he will not bear the burden of proof at trial on the matter before the court on summary judgment, the movant is not required to negate all essential elements of the adverse party’s claim; he need only point out an absence of factual support for one or more essential elements of the adverse party’s claim. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. La. C.C.P. art. 966(C)(2).
The adverse party may not rest on the mere allegations or denials of his pleadings in response to a properly made and supported motion for summary judgment. He is required to set forth specific facts showing that there is a genuine issue for trial. If he does not show this, then summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B).
On a motion for summary judgment, the district court cannot make credibility determinations or weigh conflicting evidence. In deciding a motion for summary judgment, the district court must assume that all affiants are credible. Brooks v. Minnieweather, 44,624 (La.App.2d Cir.8/19/09), 16 So.3d 1244.
| (¡The plaintiff seeks to recover against Horseshoe under La. C.C. art. 2317.1 which provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
La. C.C. art. 2317.1, enacted in 1996, effectively abrogated the concept of “strict liability” in cases involving defective things and imposed a negligence standard based on the owner or custodian’s knowledge or constructive knowledge of the defect. Hagood v. Brakefield, 35,570 (La.App.2d Cir.1/23/02), 805 So.2d 1230, writ denied, 2002-0557 (La.4/26/02), 815 So.2d 90. See also Riggs v. Opelousas General Hospital Trust Authority, 2008-591 (La.App. 3d Cir.11/5/08), 997 So.2d 814. Actions under La. C.C. art. 2317.1 require proof that the thing was in the defendant’s custody, that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused the damage and that the defendant knew or should have known of the defect. Beckham v. Jungle Gym L.L.C., 45,325 (La. App.2d Cir.5/19/10), 37 So.3d 564.
A defect under La. C.C. art. 2317.1 is a condition creating an “unreasonable risk of harm.” To be a defect, the imperfection must pose an unreasonable risk of injury to persons exercising ordinary care and prudence. Moore v. Oak Meadows Apartments, 43,620 (La.App.2d Cir.10/22/08), 997 So.2d 594.
Discussion
Regarding the requirement under La. C.C. art. 2317.1 that the plaintiff prove that the thing was in the defendant’s custody, Ms. Nicholson notes that Horseshoe concedes it had custody of the escalator.
*570 As to the second element, that the plaintiff prove that the thing contained a defect which presented an unreasonable risk of harm to others, Ms. Nicholson claims that she showed that the escalator contained defects. 17 She asserts that her experience of feeling the escalator jerking demonstrated that it had a defect. She maintains that the escalator stopped temporarily and restarted. She also urges that her husband corroborated that the escalator jerked. The plaintiff argues that the video of the accident is unclear and does not prove that the escalator failed to jerk. According to the plaintiff, the trial court impermissibly weighed the evidence by assessing the credibility of the plaintiff and her husband against the affidavit of the technician who serviced the escalator.
In this matter, Ms. Nicholson and her husband testified in their depositions that the escalator jerked, causing Ms. Nicholson to fall. The video of the incident does not show that the escalator jerked or that it stopped at any point. Others on the escalator did not fall. Service records of the escalator did not show the presence of a defective condition. No other complaints of the escalator jerking were made. However, we need not address the issue of whether Ms. Nicholson showed that the escalator was defective because the plaintiff was unable to produce factual support sufficient to carry her evidentiary burden of proof on all the elements of a claim under La. C.C. art. 2817.1.
Assuming arguendo that the testimony was sufficient to show the existence of a defect in the escalator, the plaintiff has failed to show that Horseshoe knew or should have known of the existence of the defect. The plaintiff argues that, due to the numerous complaints of people falling on Escalator # 5, Horseshoe had actual or constructive knowledge of a defect in the escalator. She claims that the incident reports give few details and do not support Horseshoe’s claim that all nine incidents were the result of patron error. Based upon the service reports involving the other incidents on Escalator # 5, the plaintiff failed to prove that Horseshoe knew or should have known of a defective condition. There had been no prior complaints that the escalator jerked and no other accident had been caused by the escalator jerking. Other accidents on the escalator were attributed to the fault of the escalator rider and the plaintiff failed to present evidence to the contrary.
Ms. Nicholson argues that her injuries could have been prevented had Horseshoe exercised reasonable care by conducting daily or weekly ^maintenance of the escalator and by posting signs warning patrons of the defective condition of Escalator # 5. The plaintiff has failed to show that daily or weekly inspections of the escalator would have prevented her fall. The escalator was inspected twice a month and was last examined five days before this incident occurred. No problems were noted at that time which would have caused the escalator to jerk. Therefore, the plaintiff has failed to show that more frequent inspections were an industry standard or were needed in this specific case.
Ms. Nicholson argues that the doctrine of res ipsa loquitur should have been applied to prove that Horseshoe was negligent. Res ipsa loquitur is a rule of circumstantial evidence whereby negligence is inferred on the part of the defendant because the facts indicate that the defendant’s negligence is the most probable cause of the injury. The test of applying res ipsa loquitur is whether the facts of the controversy suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident. Justiss Oil Company, Inc. v. *571 Monroe Air Center, L.L.C., 45,356 (La. App.2d Cir.8/11/10), 46 So.3d 725.
Res ipsa loquitur is applicable when the following three criteria are met: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or a third person; and (3) the alleged negligence of the defendant must be within the scope of his duty to the plaintiff. Justiss Oil Company, Inc. v. Monroe Air Center, L.L.C., supra. See also Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654 (La.1989); Linnear v. CenterPoint Energy Entex/Reliant Energy, 2006-3030 (La.9/5/07), 966 So.2d 36.
In the court below, Ms. Nicholson did not argue that res ipsa loquitur should be applied. Therefore, Horseshoe contends that Ms. Nicholson cannot now urge the application of that doctrine in this case. However, even if the issue were properly before us, Ms. Nicholson’s argument is without merit.
The facts of the controversy do not suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident. We particularly note that, for the application of res ipsa \ flloquitur⅛ the evidence must sufficiently eliminate other probable causes of the injury, such as the conduct of the plaintiff or a third person. Here, the evidence does not eliminate the possibility that the plaintiff lost her balance and fell due to her own conduct. Therefore, the doctrine of res ipsa loquitur is not applicable in this matter.
Because Ms. Nicholson has failed to establish factual support for all the elements of her claim, there is no genuine issue of material fact and the trial court correctly granted summary judgment in favor of Horseshoe.
CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court granting summary judgment in favor of Horseshoe Entertainment, Louisiana Partnership, and rejecting the claims of the plaintiff, Julia Nicholson. Costs in this court are assessed to the plaintiff.
AFFIRMED.