Judge Rosemary Ledet
This is a tort suit. The Relator, The Howard Hughes Corporation ("Howard Hughes"), filed an application for supervisory writ, seeking review of the trial court's judgment denying its motion for summary judgment. In accordance with the requirements of La. C.C.P. art. 966(H),[1] we ordered additional briefing by the parties and heard oral arguments. For the reasons that follow, we grant Howard Hughes' writ application, reverse the trial court's ruling denying its summary judgment motion, and render summary judgment dismissing Ms. Maddox's claims against it.
FACTUAL AND PROCEDURAL BACKGROUND
On November 29, 2014, at about 10:45 p.m., Ms. Maddox slipped and fell while walking down a non-moving escalator at the Riverwalk Shopping Center (the "Riverwalk") in New Orleans, Louisiana.[2] Ms. Maddox went to the Riverwalk that night to deliver a set of keys to her daughter, who was working as the manager of one of the restaurants in the food court. To get to the restaurant, which was located on an upper level of the Riverwalk, Ms. Maddox took an elevator. While at the restaurant, Ms. Maddox helped her daughter take out the garbage to a back hallway where the restaurants in the food court place their garbage and grease traps. After taking out *336 the garbage, Ms. Maddox attempted to exit the Riverwalk using the same route by which she had entered. Although the mall closed at 9:00 p.m., other patrons were still present.
As Ms. Maddox was leaving, she observed that cleaning machines, which the cleaning company was using, had deposited water on the floor. After discovering that the elevator was turned off, Ms. Maddox walked through the water to the escalator, which likewise was turned off. Nonetheless, she decided to walk down the non-moving escalator, using it as a flight of stairs. When she stepped on the third step, Ms. Maddox's leg went out from under her and she fell, sustaining personal injuries.
Seeking to recover for her personal injuries, Ms. Maddox commenced this suit against, among others, Howard Hughes.[3] Howard Hughes was sued in its capacity as the owner and operator of the Riverwalk and, by extension, its escalator. In her petition, Ms. Maddox alleged that Howard Hughes' is liable to her for its negligence as a "merchant" under La. R.S. 2800.6 and as the owner of the premises and, by extension, the escalator under La. C.C. art. 2317.1.[4] In addition, Ms. Maddox alleges that Howard Hughes may be held liable under the theory of res ipsa loqitur.
After taking Ms. Maddox's deposition, Howard Hughes filed a motion for summary judgment. Following a hearing, the trial court denied the motion. In its oral reasons for judgment, the trial court observed as follows:
[T]here are issues on both sides whether or not the turning off of that escalator and the subsequent fall of the lady was contributed to in some manner by which there was no posting of a sign of warning or that the escalator was wet in some fashion. And whether or not these matters contributed to her incident is something that the trier of fact should determine. We do not make a determination on the merits of the case here, nor do we make a determination as to whether or not the escalator was unreasonably dangerous. The trier of fact is going to have to determine whether ... there was some negligence on the part of the owner of this property.[5]
*337 This writ application followed. As noted at the outset, we granted Howard Hughes' writ to address whether the trial court erred in denying its motion for summary judgment. For the reasons that follow, we answer that question in the affirmative.
Summary Judgment Principles
The summary judgment procedure is used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. La. C.C.P. art. 966(A)(3) (observing that "[a] motion for summary judgment is "a procedural vehicle for dismissing issues of law and/or fact that are not in dispute"). "A defendant can successfully move for summary judgment if he or she can demonstrate beyond peradventure the nonexistence of a fact essential to the plaintiff's cause of action." Frank L. Maraist, 1 LA. CIV. L. TREATISE , CIVIL PROCEDURE § 6:8 (2d ed. 2018). The summary judgment procedure is "designed to secure the just, speedy, and inexpensive determination of every action," and the summary judgment procedure is favored. La. C.C.P. art. 966(A)(2).
Appellate courts review the grant or denial of a motion for summary judgment de novo , employing the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Garces-Rodriguez v. GEICO Indem. Co. , 16-196, p. 3 (La. App. 5 Cir. 12/21/16), 209 So.3d 389, 391 ; Sislo v. New Orleans Ctr. for Creative Arts , 16-0178, p. 4 (La. App. 4 Cir. 8/17/16), 198 So.3d 1202, 1205 (citing Samaha v. Rau , 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 ). The standard for granting a motion for summary judgment is set forth in La. C.C.P. art. 966(A)(3), which provides:
After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.
A shifting burden of proof is set forth in La. C.C.P. art. 966(D)(1), which provides:
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.
A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc. , 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." Chapital v. Harry Kelleher & Co., Inc. , 13-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81. Whether a fact is material is a determination that must be made based on the applicable substantive law. Roadrunner Transp. Sys. v. Brown , 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270 (citing Smith , supra ).
*338 Discussion
In her petition, Ms. Maddox asserts various tort theories of recovery requiring proof of the existence of a defect in the escalator. See La. C.C. arts. 2317, 2317.1, and 2322.[6] "A defect, within the meaning of Article 2317.1, is a condition or imperfection in an object that causes it to present an unreasonable risk of injury to persons exercising ordinary care." Conner v. Kraemer-Shows Oilfield Servs., LLC , 33 F.Supp.3d 725, 728 (W.D. La. 2014). The existence of a defect may not be inferred solely from the fact that an accident occurred; rather, a plaintiff is required to prove, by a preponderance of the evidence, the existence of a defect and that the defect caused the plaintiff's damages. King v. Allen Court Apartments II , 15-0858, p. 7 (La App. 1 Cir. 12/23/15), 185 So.3d 835, 840 (citing Thompson v. BGK Equities, Inc. , 04-2366 (La. App. 1 Cir. 11/4/05), 927 So.2d 351, 355 ).
In its motion for summary judgment, Howard Hughes argued that Ms. Maddox could not meet her burden of establishing the existence of a defect because she "cannot identify or describe what allegedly caused her to slip and fall after stepping onto the escalator." In support of its motion, Howard Hughes attached a copy of Ms. Maddox's deposition in which she repeatedly stated that she did not know what caused her fall. When asked whether she knew what caused her to fall, she replied no. When asked whether she saw anything on the escalator which would have caused her to fall, she replied no. When asked whether the escalator steps were slippery, she replied "I can't tell you that one. I don't know."[7]
*339 We find that Howard Hughes met its initial burden of establishing that Ms. Maddox will not be able to meet her burden of proving an essential element of her claim-the existence of a defect.[8] As provided for in La. C.C.P. art. 966(C)(2), the burden shifted to Ms. Maddox to set forth specific facts to show a genuine issue of material fact for trial. We find that she failed to do so.[9]
As Howard Hughes points out, outside of the escalator being turned off-non-moving-Ms. Maddox has alleged no other defect in the escalator that could have caused her to fall. Howard Hughes argued before the trial court that to accept Ms. Maddox's argument that all escalators that are turned off are unreasonably dangerous would lead to absurd consequences. Indeed, the gist of Ms. Maddox's argument is that a non-moving escalator is inherently defective. We find this argument unpersuasive and insufficient to withstand summary judgment.[10]
Ms. Maddox provides no factual support, expert testimony, statute, or case law supporting her allegation that a non-moving escalator poses a great risk of harm to an individual attempting to utilize it than would a set of stairs. She simply alleges that Howard Hughes should have known, and that it was reasonably foreseeable, that a patron might attempt to use a shut down escalator as stairs if the escalator was not blocked off and no warning sign was posted. She further alleges that Howard Hughes should have known that the use of a shutdown escalator would pose a great risk of harm to a patron attempting to walk down it. She also speculates that "[t]he treads of the escalator not being the same as stair treads it is unreasonably dangerous to allow the escalator to be used in this manner."
"[A]llegations [that a non-moving escalator is more dangerous than stairs], inferences [that since her feet were dry and it was the nearest exit to her vehicle, the escalator was the cause of her fall], and speculations [that the escalator treads were not the same as stair treads] are not sufficient to create a genuine issue of material fact." Smith v. Casino New Orleans Casino , 12-0292, p. 11 (La. App. 4 Cir. 10/3/12), 101 So.3d 507, 514 ; Thomas v. Caesars Entm't Operating Co., Inc. , 12-1202, pp. 3-4 (La. App. 4 Cir. 1/23/13), 106 So.3d 1279, 1284 (Ledet, J., dissenting);
*340 Reed v. Home Depot USA, Inc. , 37,000 at p. 5 (La.App. 2 Cir. 4/9/03), 843 So.2d 588, 591-92 (observing that "without more evidence, the fact that the plaintiff slipped and fell on the defendant's premises does not compel a finding that the premises were unreasonably dangerous").
Moreover, Ms. Maddox's argument, as Howard Hughes contends, essentially invokes the doctrine of res ipsa loquitur -because she fell, there must have been a defect in the escalator. Res ipsa loquitur is "a rule of circumstantial evidence whereby negligence is inferred on the part of the defendant because the facts indicate that the defendant's negligence is the most probable cause of the injury." Nicholson v. Horseshoe Entm't , 46,081, p. 8 (La.App. 2 Cir. 3/2/11), 58 So.3d 565, 570. Res ipsa loquitur is a qualification to the general rule against presuming negligence based on the happening of an accident and, thus, must be "sparingly applied." Day v. National U.S. Radiator Corp. , 241 La. 288, 128 So.2d 660, 665 (1961). To invoke the doctrine, a plaintiff must satisfy all of the following three requirements:
1. the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant;
2. the defendant had exclusive control over the thing causing the injury; and
3. the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant's part.
Spott v. Otis Elevator Co. , 601 So.2d 1355 (La.1992).
Here, the first requirement cannot be satisfied. Res ipsa loquitor does not apply to cases involving ordinary accidents or injuries that often occur in the absence of negligence like this one. See Linnear v. CenterPoint Energy Entex/Reliant Energy , 06-3030, pp. 10-11 (La. 9/5/07), 966 So.2d 36, 44 ; RESTATEMENT ( SECOND ) OF TORTS § 328D (1965) (observing that "[t]he fact ... a man falls down stairs is not, in the absence of anything more, enough to permit the conclusion that there was negligence ... in the construction of the stairs, because it is common human experience that such events all too frequently occur without such negligence"). Given the first requirement cannot be satisfied, we need not consider the other two requirements. Ms. Maddox's reliance on the doctrine of res ipsa loquitor is misplaced.
CONCLUSION
Accordingly, we grant Howard Hughes' writ application, reverse the trial court's ruling denying its summary judgment motion, and render summary judgment dismissing Ms. Maddox's claims against it.
WRIT GRANTED; JUDGMENT REVERSED; AND RENDERED
LOBRANO, J., CONCURS IN THE RESULT.

La. C.C.P. art. 966(H) provides as follows: "[o]n review, an appellate court shall not reverse a trial court's denial of a motion for summary judgment and grant a summary judgment dismissing a case or a party without assigning the case for briefing and permitting the parties an opportunity to request oral argument."

The statement of the facts is taken from Ms. Maddox's deposition testimony, which was the only evidence the parties presented to the trial court in connection with Howard Hughes' summary judgment motion.

Among the other defendants was the cleaning company whose machines had deposited water on the floor of the Riverwalk. Ms. Maddox alleged in her petition that there was "a cleaning product, water, and/or other foreign substance" on the escalator at the time of her fall. This allegation, however, is inconsistent with Ms. Maddox's deposition testimony that she did not see anything on the escalator. Regardless, she has abandoned this claim. Moreover, according to Howard Hughes, Ms. Maddox settled her claim against the cleaning company.

Although Ms. Maddox asserts a claim under the merchant liability statute, the jurisprudence has held that a shopping mall owner, such as Howard Hughes, is not a "merchant" as defined in the statute, La. R.S. 9:2800.6(C)(2). See Katsanis v. State Farm General Ins. Co. , 615 So.2d 1114 (La. App. 5th Cir. 1993) (observing that "[w]e do not find authority to extend that statute beyond the legislature's clear definition to include landowners. See Reynolds v. St. Francis Medical Center , 597 So.2d 1121 (La. App. 2[d] Cir. 1992)"). We thus find the merchant liability statute inapposite here.

At this court's request, Howard Hughes supplemented its writ application was a copy of a signed judgment. Although the summary judgment motion was heard and decided by an ad hoc judge, the written judgment was signed by the district court judge who replaced the ad hoc judge when his term expired. See La. R.S. 13:4209(B)(1) (providing that "[i]n cases which are heard and in which judgment is rendered, but not signed, whether the case was taken under advisement or not, if the judge who rendered the judgment ... term expires before signing judgment in the case, his successor in office shall have the authority to sign a judgment which conforms with the judgment rendered").

As Howard Hughes points out, Ms. Maddox's claim is properly analyzed using a modified duty-risk analysis applicable to premises liability claims under La. C.C. arts. 2317, 2317.1, and 2322, which requires a plaintiff to establish all of the following six elements:
1. The thing was in the owner's custody or control;
2. The thing contained a defect creating an unreasonable risk of harm;
3. The damage was caused by the defect;
4. The owner knew or should have known of the vice or defect;
5. The owner could have prevented the damage by the exercise of reasonable care; and
6. The owner failed to exercise such reasonable care.
See Alexander v. Hancock Bank , 16-0662, pp. 5-6 (La. App. 4 Cir. 2/8/17), 212 So.3d 713, 717 ; See also Joseph S. Piacun, The Abolition of Strict Liability in Louisiana: A Return to a Fairer Standard or an Impossible Burden for Plaintiffs? , 43 Loy. L. Rev. 215, 235 (1997) (explaining that "[f]irst, the existing requirements under article 2317 must be satisfied" and that "[a]fter these requirements are satisfied, article 2317.1's negligence requirements must be met").

Although Ms. Maddox alleged in her petition that there was a substance on the escalator that caused her to fall or that water from the cleaning company played a part in her falling, this is contradicted by her deposition testimony. As noted elsewhere in this opinion, Ms. Maddox has abandoned this argument. Indeed, Ms. Maddox argues that any danger posed to her by the wet and soapy floor had been removed by the rug she walked over before getting on the escalator.
In her opposition to the summary judgment motion and to the instant writ application, Ms. Maddox characterizes the non-moving escalator as "the simplest means of Plaintiff exiting to her vehicle." Inconsistently, she argues that "there was no alternative route available to her" other than the non-moving escalator. In her deposition, however, Ms. Maddox acknowledged that the reason she did not go back into the Riverwalk and take the traditional way out using steps was because her "car was right down there at the bottom of the escalators." The record thus reflects that Ms. Maddox decided not to reenter the Riverwalk to go down the regular steps because her car was parked near the bottom of the escalator and that she had other exits available.

Because Ms. Maddox cannot establish a defect, she likewise cannot establish another element of her claim-cause-in-fact. Simply stated, "[t]here must be a causal relationship between the defendant's wrongful act and the plaintiff's injury." Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 4.01 (2d ed. 2018); see also Garrison v. Old Man River Esplanade, L.L.C. , 13-0869, p. 5 (La. App. 4 Cir. 12/18/13), 133 So.3d 699, 702 (observing that "[i]nherent in these elements [of establishing liability under La. C.C. art. 2317.1 ] is that the vice or defect [here the non-moving escalator] causes the injury").

Given our finding that the elements of defect and cause-in-fact are not met, we do not reach the alternative argument Howard Hughes makes that any alleged defect was open and obvious.

See Adamo v. Nat'l R.R. Passenger Corp. , 71 A.D.3d 557, 558, 897 N.Y.S.2d 85, 87 (2010) (observing that "[t]he temporarily stationary stairway [non-moving escalator] did not present a reasonably foreseeable hazard ..., particularly in the absence of any allegation that it was in ill repair ..., or that any of the steps, including the one on which she tripped, was defective or covered with debris"); Ugaz v. Am. Airlines, Inc. , 576 F.Supp.2d 1354, 1366 (S.D. Fla. 2008) (observing that "it would be speculation to say that the [sic] it was the escalator's stationary status that caused the Plaintiff's fall" and finding that that "a nonoperational or stopped escalator, standing alone, is not reasonably considered an 'unusual or unexpected event' constituting an 'accident").