pLOLLEY, J.
John Spencer, Jr. (“Spencer”) appeals the Judgment rendered by the Twenty-Sixth Judicial District Court, Bossier Parish, in favor of Red River Lodging, d/b/a Ramada Inn (“Ramada Inn”), American Central Insurance Company, Industrial Roofing & Supply Company, Union Pacific Railroad Company, CNA Insurance Company, CIGNA Insurance Company, Corporate Lodging Consultants, Inc., Valley Forge Insurance Company and Transportation Insurance Company (collectively, “appellees”). For the following reasons, we affirm.
Facts
Spencer was a railroad engineer employed by Union Pacific Railroad Company (“Union Pacific”). At the time the incident in question occurred, however, he was working for Southern Pacific Transportation Company (“Southern Pacific”) as a “borrowed employee.”
Union Pacific contracted with Corporate Lodging Consultants, Inc. to obtain lodging for the Union Pacific crews which traveled in connection with their employment. *340 Spencer claims that normally such lodging for Southern Pacific employees would be at a Holiday Inn, but on the night before the alleged incident, May 11, 1997, he was directed to a Ramada Inn instead.
The Ramada Inn where Spencer checked in was undergoing renovations and roof repairs, which work was being done by Industrial Roofing and Sheet Metal Works (“Industrial Roofing”). Spencer checked in late on the evening of May 11. His room was in the vicinity of the roofing | awork that was being done, although there was no work being done when he checked in since it was late Sunday evening. Spencer went to bed shortly after checking in. Spencer claims that he awoke between 10:30 and 11:30 a.m. on May 12, and that his room was full of fumes and smoke. Notably, neither the smoke detector nor fire alarm sounded. When he went outside for fresh air, he claims to have noticed the tar pot in the parking lot under his second floor room and that fumes from the tar pot were wafting into his room via the am conditioning. Industrial Roofing claims that the tar pot was fifty feet from Spencer’s room door. A roofing tarp was hanging from the roof, blocking the front of the room door. Spencer complained to the hotel management and requested a room change. Later that morning when his “symptoms” did not clear, the hotel brought him to a physician. According to Spencer, he complained of an exposure to fumes, dizziness, nausea, shortness of breath and headaches, for which he was treated. Ramada Inn paid for this visit. Subsequently, Spencer saw his family physician, who Spencer states noted inflamed mucosa.
Spencer continued to work over the subsequent months; however, he claimed that his condition did not improve and he was sensitive to any form of respiratory irritant, including the diesel fumes that were part of his workplace environment. Spencer’s treating physician referred to his condition as Reactive Airways Disease (“RADs”) and referred him to various specialists. This diagnosis was confirmed by a pulmonologist, and Spencer returned to work. At work, Spencer was exposed to diesel fumes, which he states caused a “flare-up” that developed into bronchitis. His [ .^pulmonologist took him off work commencing on January 21, 1998, and Spencer never returned.
Spencer filed suit against Ramada Inn, American Central Insurance Company, Industrial Roofing, Union Pacific, CNA Insurance Company, CIGNA Insurance Company (“CIGNA”), Corporate Lodging-Consultants, Inc., Valley Forge Insurance Company and Transportation Insurance Company. After an eight-day jury trial, a verdict was returned against Spencer and in favor of the appellees, and Judgment was entered dismissing Spencer’s claims. This appeal by Spencer ensued. The ap-pellees have answered Spencer’s appeal, arguing that the trial court erred in assessing the costs of litigation equally between Spencer and the appellees, in light of the jury’s verdict against Spencer. Additionally, CIGNA, Ramada Inn’s excess insurer, has answered the appeal, arguing that the trial court erred in denying its earlier Exception of Res Judicata.
Discussion
On appeal, Spencer raises five assignments of error, four of which are related to the jury’s ultimate determination that none of the appellees were liable for Spencer’s alleged injury. For the following reasons, we conclude that those assignments of error are without merit.

Standard of Review

As this court recently stated in Woods v. State ex rel. Department of Transp. and Development, 37,185 (La.App.2d *341 Cir.08/14/03), 852 So.2d 1109, 1119-20, writ denied, 2003-2584 (La.11/26/03), 860 So.2d 1140:
In Cormier v. Comeaux, 1998-2378 (La.07/07/99), 748 So.2d 1123, the supreme court explained the standard of review for appellate courts examining the jury’s .findings of fact. Absent manifest error or clear wrong, the court of appeal may not set aside the jury’s finding of fact. To reverse a jury’s factual determinations, the appellate court must find (1) that a reasonable factual basis does not exist in the record for the jury’s finding; and (2) that the record establishes that the finding is clearly wrong (manifestly erroneous). The reviewing court must do more than review the record for some evidence which supports or controverts the jury’s finding. Instead, the appellate court must review the entire record to determine whether the jury’s finding was clearly wrong or manifestly erroneous. The issue is not whether the jury was right or wrong, but whether the jury’s conclusion was reasonable. Even if an appellate court concludes its own evaluations and inferences are more reasonable ■ than the jury’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where testimony conflicts.
Thus, our review of the record is to determine the reasonableness of the jury’s final conclusion, and whether that conclusion was clearly wrong or manifestly erroneous. For the following reasons, we determine that it was not.

Negligence of Industrial Roofing

Spencer argues that the jury erred in not finding Industrial Roofing negligent and the legal cause of his alleged injury. He claims that Industrial Roofing was negligent in failing to inform Ramada Inn of the danger of bitumen fumes and/or for failing to coordinate its work schedule so as not to risk exposing Ramada Inn’s guests to the fumes. We disagree.
Negligence is examined under a duty/risk analysis. The duty/risk analysis consists of four parts: (1) eause-in-fact, (2) existence of a duty, (3) breach of duty, and (4) whether the risk, and harm caused, was within the scope of protection afforded by the duty breached. Roberts v. Benoit, 605 So.2d 1032, 1043 (La.1991). The existence of a duty is a question of law. Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La.1993); Roberts, supra. All persons have a general duty to act in a reasonable fashion so as to avoid harming others. La. C.C. art. 2316. Therefore, negligence generally is found to exist when a tortfeasor knows or should have known that his behavior has created an unreasonable risk, which is reasonably foreseeable to damage another, yet the tortfeasor does not alter his behavior to avoid the harm.
At the trial, the jury heard Spencer’s account of the incident. Spencer described checking into the hotel on Sunday night at approximately 9:30 p.m. He testified that he saw a sign in the lobby of the hotel regarding the ongoing remodeling. Spencer stated that he went to his room, and that he noticed a tarp in front of his room. He described the tarp as hanging in front of his room and extending between the rooms on either side of his. He testified that he fell asleep and was awakened early in the morning by noise outside of his room, but that he went back to sleep. Then, according to Spencer, he again awoke, this time around 10:30 a.m., and his room was “full of smoke, fumes.... ” He described his condition as “disoriented, nauseous, severe headache, I couldn’t breathe.... ” Spencer testified that he left the room immediately, but he did not let *342 anyone on the roofing crew working below his room know about the smoke, nor did he complete an incident report or ask someone from the hotel to examine his room and observe the situation. Furthermore, at trial, Spencer acknowledged that in his previous deposition he could not remember whether the walkway behind | ¡¡the tarp was smoky; however, at trial (some four years after his deposition), he was able to testify that the walkway behind the tarp was full of smoke.
Lynn Polk (“Polk”), who had worked for Industrial Roofing for more than thirty years, also testified.[1] Polk was the roofing supervisor in charge of the job at the Ramada Inn, which he characterized as a major roofing job. Polk explained that the tarp was draped in front of the rooms in order to keep dust and debris off the building, and further stated that there was no concern that dust particles would enter the guest rooms via the air-conditioning vents. Polk also stated that the only concern he had for occupants of the rooms would have been due to the noise made during the roofing process. Polk testified that Yung Juhn (“Juhn”), Ramada Inn’s owner, never said he would not place guests in the rooms where the construction was occurring and Polk never suggested or explicitly told Juhn that guests should not be housed in the rooms adjacent to the work area. Polk only told Juhn that the work would be noisy and would disturb its guests in that matter. Thus, the work was characterized as more of a nuisance than a hazard.
Polk also discussed a materials safety data sheet for the roofing asphalt used on the job. He acknowledged that the report noted that “inhalation of vapors or fumes may cause irritation to the respiratory system.” We note, significantly, that this warning is contained under the heading, “Health & Employee Information.” Polk went on to testify that he [7never had a worker suffer from irritation to their respiratory system as a result of inhaling bitumen vapors or fumes. Additionally, he noted that his workers had worked in confined areas enclosed in buildings and had not had any problems with the bitumen fumes or vapors. Polk stated that “we had no earthly idea that there could even possibly be a hazard.... ” Polk had roofed that same Ramada Inn three times, and this was the only incident ever complained of. Polk testified that he had worked on other hotels before, and none had ever closed off a portion of the hotel while the roofing work was performed, nor had Industrial Roofing suggested that it should be done in this instance. In fact, at trial, Polk testified that he has even performed the same type of work on schools while they were occupied with children.
In this case, the evidence shows that Industrial Roofing acted reasonably while repairing the Ramada Inn roof. It conducted its operations in its customary manner. There was no evidence of complaints, and there was no evidence of prior incidents of a similar nature. Clearly, Industrial Roofing was not acting unreasonably in the performance of its work at Ramada Inn, and the jury reasonably determined that Industrial Roofing was not negligent in regards to the alleged exposure by Spencer.

Negligence of Ramada Inn

Spencer further maintains that Ramada Inn acted negligently and was the legal cause of his alleged injuries. Specifically, Spencer argues that Ramada Inn *343 owed each of its guests a duty to provide a safe, comfortable, |squiet room in which to stay. Ramada argues that it exercised ordinary and reasonable care to its guests during the remodeling project. We agree.
A hotel owes a duty to its patron to exercise reasonable and ordinary care including maintaining the premises in a reasonably safe and suitable condition. Jones v. Hyatt Corp. of Delaware, 94-2194 (La.App. 4th Cir.07/26/95), 681 So.2d 381, citations omitted. Although the keepers of inns, lodging houses, or restaurants are not the insurers of the safety of their guests, they are under an obligation to exercise, at least, ordinary or reasonable care to keep them from injury. Edwards v. Great Am. Ins. Co., 146 So.2d 260, 262 (La.App. 2d Cir.1962), citing 43 C.J.S. Innkeepers 22, p. 1173. Accordingly, Ramada Inn’s duty was to exercise reasonable and ordinary care to maintain its property in a reasonably safe and suitable condition.
Juhn, the owner of this particular Ramada Inn franchise, also testified at trial. He explained that when it was time to have the roof on the building repaired, he contacted Industrial Roofing, which had previously repaired the roof. He noted that in May 1997 the occupancy rate of his hotel was eighty to ninety percent. Significantly, Juhn also testified that he was never advised by Industrial Roofing to close off or block off any areas of the hotel where construction was occurring, which testimony is consistent with Polk’s. In fact, he stated that because of the high occupancy at the time, most likely almost all of the rooms in the wing where Spencer stayed were ^occupied that same night.[2] Juhn stated that the desk clerks were instructed to inform guests that construction was being done on the building and to let them know if there was a problem. Furthermore, he noted that there were signs placed in the hotel to inform the guests of the construction. Juhn also testified that it was his policy that the individual room air conditioners would have closed air vents and be set on the re-circulation phase, although he did not know for sure that Spencer’s room air conditioner was so set. According to Juhn, during the phase of construction by Industrial Roofing, he never had any other guest or an employee complain of tar fumes or smoke during the entirety of the roofing project.
Harold Jackson’s (“Jackson”) deposition was read into evidence at the trial. In May 1997, Jackson was a manager trainee at Ramada Inn, where he had been employed for approximately one month. Jackson testified that Ramada Inn had a policy to maintain a reasonably safe and comfortable room for its guests, including freedom from hazards to their personal health. He also stated that no other guest complained during the period of time that the roofing job occurred. Jackson agreed that signs were placed in the lobby informing guests of the construction.
*344 Here, the jury, after hearing the evidence presented, determined that Ramada Inn was not negligent with respect to Spencer’s alleged exposure to |inthe tar fumes. On appeal, we must determine whether that conclusion was reasonable, and our inquiry, based on the claims made by Spencer, is whether Ramada Inn exercised “reasonable care” to keep Spencer from injury. The jury heard evidence that signs had been placed in the hotel informing guests of the remodeling underway. Such warning in other types of eases has been deemed sufficient. For instance, in Woods, supra, this court determined that DOTD’s duty was to exercise reasonable care to warn motorists of any dangerous conditions in a construction zone, and that reasonable care required that DOTD erect barricades, signs, and adequate warnings to alert the public.
Informing the hotel guests that remodeling was occurring on the premises was reasonable. Roof repairs on any building are commonplace, and it does not seem unreasonable that Ramada Inn did not question the possibility of exposure of hazardous fumes to its guests in light of the information it obtained from Industrial Roofing. Significantly, as discussed herein, Industrial Roofing did not warn Ramada Inn that its guests could be exposed to hazardous conditions during its work on the hotel. Juhn was only told that the work would be noisy. Moreover, certainly there could have existed a possibility of a guest’s exposure to fumes from the construction; however, it is unreasonable for Ramada Inn to keep their guests safe from a mere remote possibility. Ramada Inn had a duty to exercise reasonable care by ensuring the safety of their guests. This duty cannot be extended to those events that are remote possibilities. The jury Inwas not clearly wrong in its conclusion that Ramada Inn acted reasonably toward Spencer under the facts at hand.
Additionally, Spencer’s testimony at trial on whether the walkway behind the tarp contained smoke was inconsistent from his earlier deposition testimony. The jury could have reasonably questioned his credibility.
Furthermore, the determination that Ramada Inn was not negligent makes moot Spencer’s claim that Union Pacific was vicariously liable for the negligence of Ramada Inn. Thus, that assignment of error is also without merit. Cigna’s answer to appeal regarding the denial of its Exception of Res Judicata is also made moot by the conclusion herein.

Preclusion of Industry Publications

Spencer also argues that the trial court erred in not allowing his expert, Dr. Marto Frampton (“Dr. Frampton”), refer to certain articles that Spencer claims were important references in support of Dr. Frampton’s opinion. Specifically, at issue were two articles entitled “The Facts about Asphalt Fumes and Health” and “The Health Effects of Occupational Exposure to Asphalt Fumes.”[3]
At trial, Dr. Frampton testified that the articles were provided to him by Spencer’s attorney. Dr. Frampton did not contact the sources of the articles, i.e., the coalition group, nor did he take steps to verify the accuracy of the articles. Dr. Frampton stated he did not know the authors of the articles or even know who the authors were, and, accordingly, was not 11?aware of their expertise on the topic. Dr. Framp- *345 ton did not know the date of the articles. Finally, Dr. Frampton was not affiliated with the coalition group that authored the articles.
Louisiana C.E. art. 803, states as follows:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
s¡? * * *
(18) Learned treatises. To the extent called to the attention of an expert witness upon cross-examination or, in a civil case, relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, such a statement may be read into evidence and received as an exhibit but may not be taken into the jury room. (Emphasis added).
We find that the trial court did not err in refusing to allow Dr. Frampton’s testimony regarding the contents and opinion of the articles at issue. Clearly, Dr. Frampton’s testimony falls short of the requirement to establish the articles as reliable authorities on the hazard of exposure to bitumen fumes. His reference to those articles would have been prejudicial for various reasons. For instance, he did not know the date of the articles, which would certainly be relevant to determine whether the opinions stated therein were so held in the industry at the time of Spencer’s alleged exposure. Additionally, he had no knowledge of the authors of the article or their credentials. When such treatises have been allowed, this court has acknowledged the “recognized authority” of such to except it from the hearsay rule. See, Warren v. Everist, 30,187 (La.App.2d Cir.01/21/98), 706 So.2d 593, writ denied, 1998-0477 (La.04/03/98), 717 So.2d 1132. Here, Dr. Frampton failed to establish that the articles at issue were a “reliable authority” upon which he based his opinion. Thus, any reference to such was properly excluded by the trial court. This assignment of error is without merit.

Assessment of Costs

The appellees have answered Spencer’s appeal, arguing that the trial court erred in assessing equally the costs between the parties. On this point, we determine, again, that the trial court did not err.
The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court. Spillers v. ABH Trucking Co., Inc., 30,332 (La.App.2d Cir.04/13/98), 713 So.2d 505, writ denied, 1998-1313 (La.06/26/98), 719 So.2d 1063 and writ denied, 1998-1327 (La.06/26/98), 719 So.2d 1287, citing McConathy v. McConathy, 25,542 (La.App.2d Cir.02/23/94), 632 So.2d 1200, writ denied, 94-0750 (La.05/06/94), 637 So.2d 1052. While it is a general rule that the party cast in judgment shall be taxed with costs, the trial court may assess costs of a suit in any equitable manner. Upon review, a trial court’s assessment of costs can be reversed only upon a showing of an abuse of discretion. Jackson v. Lare, 34,124 (La.App.2d Cir.11/01/00), 779 So.2d 808, citing Grocery Supply Co. v. Winterton Food Stores, 31,114 (La.App.2d Cir.12/09/98), 722 So.2d 94.
| i/The issue of costs was argued by the parties before the trial court and subsequent to the rendering of the jury’s verdict. During that hearing, the trial court considered the costs incurred by all parties and heard extensive argument in that regard. In fact, at that hearing, counsel for Union Pacific conceded that he did “... *346 not expect the court to award all of [the costs], but I hope that the court would see within its discretion to award some small measure of costs against Mr. Spencer....” Later, he argued that “... it is appropriate under the circumstances for the court to assess some costs. I don’t expect and really couldn’t ask the court to assess all these costs.... ” After concluding arguments on the issue, the trial court assessed costs equally between Spencer and the appellees and set certain costs as reflected in the Judgment. We cannot say that the trial court abused its great discretion in assessing the costs equally. This argument by appellees is without merit.
ConClusion
For the stated reasons, the Judgment in favor of appellees and against John Spencer, Jr. is hereby affirmed, with costs of the appeal to be paid by Spencer.
AFFIRMED.

. Polk's testimony at trial was both read into the record from his previous deposition as well as taken live.

. Although there was testimony that the Ramada Inn had not been housing guests in the vicinity of the construction — testimony in contradiction to Juhn's — the jury was within its province in believing either version of events. When findings are based on determinations regarding the credibility of witnesses, the manifest error standard accords great deference to the trier of fact's findings, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what was said. Where a fact finder’s conclusion is based on its decision to credit the testimony of one of two or more witnesses, that determination can virtually never be manifestly erroneous or clearly wrong. Pope v. Prunty, 37,395 (La.App.2d Cir.08/20/03), 852 So.2d 1213, 1218, writ denied, 2003-2496 (La.11/26/03), 860 So.2d 1137, citations omitted.

. The articles were published by Asphalt Roofing Industry Science and Medical Group, a coalitional organization of the Asphalt Roofing Manufacturers Association, the National Roofing Contractors Association, the Asphalt Institute, and the Roofing Coatings Manufacturing Association (the “coalition group”).