DREW, J.
| jDarlene Johnson appeals a judgment granting Super 8 Lodge-Shreveport’s motion for summary judgment and dismissing her petition.
We affirm.
FACTS
In September of 2008, Darlene, her boyfriend, and her disabled father were guests at the Super 8 Lodge in Shreveport after having evacuated Lake Charles because of a hurricane.
The Super 8 Lodge offered two types of suites: a family suite and a Jacuzzi suite. The hotel apparently had six suites at the time, two of which were Jacuzzi suites. The family suites contained a king-size bed and a queen-size bed. The Jacuzzi suites contained a king-size bed and a Jacuzzi. The television in the Jacuzzi suites faced a small sofa and a Jacuzzi that was behind the sofa. The television was placed on a shelf in an entertainment center that was positioned at a 90° angle to the bed. In contrast, the entertainment centers in the family suites faced the king-size bed, but the televisions were apparently on a swivel.
Darlene, her father, and her boyfriend stayed in a Jacuzzi suite. Because she was unable to view the television from the bed, Darlene had asked several times that the entertainment center be moved, and the hotel’s maintenance man, Charles Johnson, complied with her requests. On the morning of September 12, Darlene attempted to turn the television on her own so that her father could see it from a hospital bed that was apparently next to the king-size bed. The television fell from the shelf and allegedly hit her in the face and knocked her to the ground.
*521 12Parlene filed suit against Super 8 Lodge-Shreveport. She amended her petition to add Merryton L.L.C. d/b/a Super 8 Lodge Shreveport as a defendant.
Merryton filed a motion for summary judgment in which it contended that no duty to Johnson was breached, the television did not present an unreasonable risk of harm, and the accident was not caused by the conduct of defendants. In support of its motion, Merryton submitted photos of the television in its cabinet, an excerpt from Darlene’s deposition, an EMT report, and Darlene’s medical records from her physician.
Darlene opposed the motion for summary judgment and filed a cross motion for summary judgment. She asserted that Merryton had breached the duty of care owed to her by allowing the television to rest unsecured in the cabinet, which created an unreasonable risk of harm to her. Darlene attached excerpts from the depositions of hotel employees Charles Johnson, Rita Harris, and Angie Ware to her memorandum in opposition to Merryton’s motion and in support of her own motion.
Merryton filed a reply memorandum in support of its motion for summary judgment and attached an excerpt from the deposition of Charles Johnson as well as photos of the suite.
The trial court granted Merryton’s motion for summary judgment and denied Darlene’s cross motion for summary judgment. The court noted that although Darlene alleged that the television presented an unreasonable risk of harm due to improper mounting to the cabinet, Darlene had stated that she did not know how it fell out of the cabinet. The court also noted that Rwhile Darlene argued that the placement of the television created an unreasonable risk of harm because it was foreseeable that guests would turn the television so they could watch it from bed, the couch was the intended location from which the television was to be viewed. The court further noted that while Darlene argued that other suites had different configurations and the Jacuzzi suite lacked a pull-out shelf with swivels for the television, the fact that an alternative existed did not render the hotel’s actions unreasonable, and the hotel had fulfilled any duty to provide higher than ordinary care when the hotel staff moved the television for Darlene on prior occasions.
The trial court concluded that because there was no evidence of a defect which presented an unreasonable risk of harm, Darlene could not prove the elements of her case by a preponderance of the evidence. The trial court further concluded that there was no evidence to suggest that a duty had been breached or that the accident was caused by the hotel.
DISCUSSION
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the mov-ant is entitled to judgment as a matter of law. Id.
14A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
*522 The burden of proof on a motion for summary judgment is set forth in La. C.C.P. art. 966(C)(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This provision initially places the burden of producing evidence at the hearing on the motion for summary judgment on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. Samaha v. Rau, supra; Wright v. Louisiana Power & Light, 2006-1181 (La.3/9/07), 951 So.2d 1058. At that point, the party who bears the burden of persuasion at trial must come forth with evidence (affidavits or discovery responses) which demonstrates that he or she will be able to meet the burden at trial. Samaha v. Rau, supra; Wright v. Louisiana Power & Light, supra.
| ¡^Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507 (La.12/8/00), 775 So.2d 1049.
A hotel owes a duty to its patrons to exercise reasonable and ordinary care including maintaining the premises in a reasonably safe and suitable condition. Spencer v. Red River Lodging, 37,980 (La.App.2d Cir.2/5/04), 865 So.2d 337. Although the keepers of inns, lodging houses, or restaurants are not the insurers of the safety of them guests, they are under an obligation to exercise, at least, ordinary or reasonable care to keep them from injury. Id.
An individual is responsible for the damage caused by things in his custody. La. C.C. art. 2317. The owner or custodian of a thing is answerable for damage caused by its defect only upon a showing that he knew or, in the exercise of reasonable care, should have known of the defect which caused the damage, that the damage could have been prevented by the use of reasonable care, and that he failed to exercise such reasonable care. La. C.C. art. 2317.1. Thus, to recover for damages caused by a defective thing, the plaintiff must prove that the thing was in the defendant’s custody, that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused the damage and that the defendant knew or should have known of the defect. Pamplin v. Bossier Parish Community College, 38,533 (La.App.2d Cir.7/14/04), 878 So.2d 889, writ denied, 2004-2310 (La.1/14/05), 889 So.2d 266.
In determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Reed v. Wal-Mart Stores, Inc., 1997-1174 (La.3/4/98), 708 So.2d 362. In a nutshell, the trier of fact must decide whether the social value and utility of the *523 hazard outweigh, and thus justify, its potential harm to others. Id.
Darlene concedes that a television sitting on a cabinet at waist level would not be a defect presenting an unreasonable risk of harm. However, she complains that a genuine issue of material fact exists concerning whether there was a defect presenting an unreasonable risk of harm when the suite was configured in such a manner that the television could not be viewed by guests while in the bed and because Merryton should have properly secured the television since it knew or should have known that guests would turn and adjust the television in order to view it from the bed. We disagree.
The television at issue was on a flat shelf in an entertainment center. Darlene’s account of the mishap varied somewhat. She testified in her deposition that she did not know how the television fell when she pivoted it. She asserted that the television hit her in the head because she was bending down when she attempted to pivot the television. Darlene was a little more certain of how the television fell when she spoke to EMTs following the 17accident as she told them that she was trying to move the television when she lost her balance and the television fell on her. Dr. W.C. Nabours noted that Darlene told him on September 16, 2008, that she had a loss of consciousness and could not describe what had happened. Dr. Nabours believed that she had lost consciousness before she fell and the television hit her.
The hotel was well aware that guests were unable to see the television from the bed in the Jacuzzi suites. Charles Johnson testified that if someone in that room wanted to watch television from the bed, Rita would tell him to turn the entire entertainment center for them. This had happened on prior occasions, and it was not an unusual request. However, he did not have to turn the cabinet for the majority of the guests staying in that suite because they watched television from the sofa. Charles Johnson recalled that he turned the entertainment center for Darlene several times, and then had to return the entertainment center to its original spot when Darlene wanted to watch television from the sofa.
Charles Johnson stated that none of the suites had televisions that were bolted down. According to him, an unbolted television would not fall out of that type of entertainment center.
Angie Ware testified that she had never heard of a television falling out of an entertainment center at the hotel. She denied telling Darlene or any of her family members that it had happened before.
The hotel intended for guests to watch the television from the sofa. If the guest wanted to watch the television from the bed, the hotel would |sturn the cabinet to accommodate the guest’s preferences, as it had done for Darlene prior to the accident.
Based upon the record presented, we conclude there was no genuine issue of material fact concerning whether the configuration of the suite or the lack of a securing or turning mechanism for the television presented an unreasonable risk of harm. Accordingly, the motion for summary judgment was properly granted.
DECREE
At appellant’s cost, the judgment is AFFIRMED.