STEWART, J.
Bln this case, a piece of Sheetrock fell from the ceiling onto Jacqueline Wynn and Jean Oliver (hereafter referred to as “plaintiffs”), while they were visiting their sister, Brenda Wynn, at her home. The trial court determined that John Luck, Jr., individually and d/b/a/ Luck Properties, L.L.C. (hereafter referred to as “Luck”), were liable for this accident. More specifically, the trial court found that there was a defect or ruin, that the defect or ruin caused the damage, that the ruin should have been discovered in the exercise of reasonable care, and that the damages could have been prevented in the exercise of reasonable care.
Luck appeals, asserting that the trial court erred in ruling that he knew or should have known of a defect or ruin in the sheetrock ceiling in the kitchen of Brenda’s home prior to June 16, 2010. In the event that we agree with the trial court’s finding that Luck was liable for this accident, he suggests that we assess a percentage of fault to Brenda Wynn, for failing to warn the plaintiffs of the danger before they entered the kitchen. Finding that the plaintiffs proved that Luck knew, or should have known, that the ceiling’s condition presented a risk of injury, we affirm.
FACTS
Brenda Wynn and her eight children lived in a rental house owned by Luck, from July 2007 to October 2010. This house (hereafter referred to as “Brenda’s house”) was located at 3849 Flora Avenue in Shreveport, Louisiana.
On June 16, 2010, Brenda’s sisters, the plaintiffs, went to Brenda’s house to pick *113 her up and take her to the grocery store. Upon their return to 12her house, the plaintiffs assisted her in bringing the groceries into the house. The plaintiffs allege that when they walked through the entrance from the living room into the kitchen, a three foot by six foot piece of sheetrock fell from the ceiling in the kitchen. This piece of sheetrock struck the plaintiffs, knocking them to the floor.
The plaintiffs filed suit, seeking damages for injuries they contend they sustained from the incident. They asserted that Luck was responsible for their injuries “since he knew, or in the exercise of reasonable care, should have known of the defect and/or ruin in the ceiling of the kitchen and that with the exercise of reasonable care could have prevented their injuries.”
Luck answered, denying any responsibilities for the plaintiffs’ injuries. Further, Luck denied “that he knew, or, in the exercise of reasonable care, should have known of any problems with the sheetrock ceiling in the kitchen of this house prior to this incident.” Alternatively, Luck argued that if he was responsible for the plaintiffs’ injuries, then he was not responsible for Brenda’s negligence in failing to warn her sisters of the alleged defect or ruin in the kitchen.
The trial court found Luck liable. Plaintiff Jacqueline Wynn was awarded general damages in the amount of $8,750.00, and special damages in the amount of $2,957.70. Plaintiff Jean Oliver was awarded general damages in the amount of $4,000.00 and special damages in the amount of $3,420.05.
Luck appeals.
|SLAW AND DISCUSSION

Knowledge of the Defect

Luck asserts three assignments of error in his appeal. In the first assignment, he alleges that the trial court erred in ruling that he had actual knowledge of any defect or ruin in the sheetrock in the kitchen ceiling of Brenda’s house prior to June 16, 2010. Similarly, in the second assignment of error, Luck contends that the trial court erred in ruling that he should have known of a defect or ruin in the sheetrock ceiling in the kitchen of Brenda’s house prior to June 16, 2010. Since both of these assignments address Luck’s knowledge of the defect or ruin in the sheetrock ceiling, we will discuss them together.
Under Louisiana law, the owner/lessor is generally liable for the condition of the leased premises. Greely v. OAG Properties, L.L.C., 44,240 (La.App. 2 Cir. 5/13/09), 12 So.3d 490, writ denied, 2009-1282 (La.9/25/09), 18 So.3d 77; Allstate Ins. Co. v. Veninata, 2006-1641 (La.App. 4 Cir. 11/7/07), 971 So.2d 420, writ denied, 2008-0067 (La.3/7/08), 977 So.2d 918. Liability for a thing under one’s ownership or custody is governed by La. C.C. art. 2317.1, which provides as follows:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
Thus, to recover for damages caused by a defective thing, the plaintiff must prove that the thing was in the defendant’s custody, that the thing contained |4a defect which presented an unreasonable risk of harm to others, that this defective condition caused the damage and that the defendant knew or should have known of the defect. Johnson v. Super 8 Lodge-Shreve *114 port, 47,081 (La.App. 2 Cir. 4/25/12), 92 So.3d 519; Pamplin v. Bossier Parish Community College, 38,533 (La.App. 2 Cir. 7/14/04), 878 So.2d 889, writ denied, 2004-2310 (La.1/14/05), 889 So.2d 266.
A defect pursuant to La. C.C. art. 2317.1 is a condition or imperfection that poses an unreasonable risk of injury to persons exercising ordinary care and prudence. Cavet v. Louisiana Extended Care Hosp., 47,141 (La.App. 2 Cir. 5/16/12), 92 So.3d 1122; Nicholson v. Horseshoe Entertainment, 46,081 (La.App. 2 Cir. 3/2/11), 58 So.3d 565, writ denied, 2011-0679 (La.5/20/11), 63 So.3d 980. The terms vice, defect, and ruin describe a thing’s unreasonably dangerous character. Cavet, supra; Myers v. Dronet, 2001-5 (La.App. 3 Cir. 6/22/01), 801 So.2d 1097, citing Frank L. Maraist & Thomas C. Galligan, Burying Caesar; Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 Tul. L.Rev. 339 (1996).
In determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Johnson, supra; Reed v. Wal-Mart Stores, Inc., 1997-1174 (La.3/4/98), 708 So.2d 362. In a nutshell, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. Id.
|/rhe determination of whether a defect presents an unreasonable risk of harm is a matter “wed to the facts” and must be determined in light of the facts and surrounding circumstances of each particular case. Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002. The trial court’s factual findings concerning the presence of a defect should be afforded deference, and such factual findings should be disturbed only if clearly wrong or manifestly erroneous. Heflin v. American Home Wildwood Estates, L.P., 41,073 (La.App. 2 Cir. 7/12/06), 936 So.2d 226.
Several days after the incident, Brenda’s house was inspected by the Housing Authority of the City of Shreveport on June 23, 2010. The following notations were made regarding the ceilings and walls of her home:
Bedroom 1: ceiling conditions: cracking; wall conditions: cracking.
Bedroom 2: ceiling conditions: cracking and falling: wall conditions: weak by window
Bedroom 3: ceiling conditions: falling; screws not holding.
Hall: wall conditions: need repairing. Laundry: ceiling condition: falling badly-
Living Room: wall condition: hole by door.
Kitchen: ceiling condition: fell, not finished.
Bath: ceiling condition: cracking.
The ceilings in every room of Brenda’s house, with the exception of the living room, were damaged and presented a danger to everyone who lived in or visited Brenda’s house. Needless to say, Brenda’s home failed the June 23, 2010, inspection, and it was identified as being out of compliance with the minimum standards for participation in the Section 8 housing program until and unless some repairs were made.
|fiLuck called its maintenance supervisor, Rodney Fleckenstein, as a witness at trial. He worked for Luck as a repairman for approximately five years and eight months. Fleckenstein testified that he visited the home on December 31, 2009, to repair a toilet; on February 1, 2010, to repair a hot water heater; and on May 12, *115 2010, to replace the -window unit in the living room. He further testified that in order to identify a problem with a ceiling, all that would be required was a casual observation. It is possible that one may overlook a cracked or falling ceiling in one room of a house. However, it is difficult to ascertain how one may overlook the ceiling’s horrible condition in most of the rooms of Brenda’s house on several occasions.
Although Fleckenstein did not draft any type of inspection report during these three visits, he noted that he had not seen “any dangerous condition in the kitchen before replacing the damaged ceiling in June 2010.” However, Fleckenstein noted that he would expect inspections 34 days apart to reveal essentially the same generalized condition of the house.
Fleckenstein had the opportunity to observe the conditions of the ceilings in the home when he went to make repairs on three separate occasions. In fact, he visited the home a little bit over a month prior to the June 16, 2010, incident. It is clear that Luck, through a casual observation by Fleckenstein of Brenda’s house, had the opportunity, in the exercise of reasonable care, to observe and repair the ceiling in the kitchen, as well as other areas of the home. Luck even testified that it would have cost approximately $350.00 to repair the condition in the ceiling.
|7The record supports the trial court’s finding that Luck owned Brenda’s house; that the house contained defective ceilings which presented an unreasonable risk of harm to others, namely the ceiling in the kitchen area; that this defective ceiling caused damage to Jacqueline Wynn and Jean Oliver; and that Luck, by way of his employee Fleckenstein, knew or should have known of the defective ceiling. Luck had constructive notice through Flecken-stein’s simple and casual observation of the condition of the ceilings in the rental home while he was in the home on three separate occasions. Therefore, he should have been aware of the condition of the ceiling in Brenda’s house. This assignment of error is without merit.

Affirmative Defense of Comparative Fault

In this assignment, Luck argues that should this court find that the Plaintiffs met their burden of proof to establish that he knew or should have known of the existence of a defect and/or ruin in the kitchen ceiling of Brenda’s home, then the trial court erred in failing to assess a percentage of fault to Brenda Wynn for having failed to warn the plaintiffs of the danger prior to their entering the kitchen.
Luck states that the trial court did not mention his affirmative defense of comparative fault in its oral reasons for judgment. He alleged in his answer that if he were to be found responsible for negligence in failing to repair a defect or ruin in Brenda’s house, then he should not be responsible for the percentage of fault attributable to Brenda for her failure to warn the plaintiffs of the defect or ruin before they were injured.
[«Generally, when a judgment is silent as to a claim or demand, it is presumed that the relief sought was denied. M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371 (La.7/1/08), 998 So.2d 16; Action Revenue Recovery, L.L.C., v. eBusiness Group, L.L.C., 44,607 (La.App. 2 Cir. 8/19/09), 17 So.3d 999. The trial court’s judgment, as well as its oral reasons for ruling, finding that Luck was liable for this accident, show that it gave full consideration to the facts of this matter and Luck’s claims. There being no mention in the trial court’s judgment of Luck’s contention that he “would not be responsible for the negligence of the plaintiffs’ sister or any other person whose negligence contributed *116 to and or caused the incident which is the basis of this litigation,” it is presumed the trial court rejected that assertion. We find no error in trial court’s failure to specifically address Luck’s comparative fault claim.
CONCLUSION
Based on our determination that the plaintiffs presented evidence that Luck knew, or should have known, of the condition of the ceiling in Brenda Wynn’s home, we affirm. Cost of appeal are assessed to John Luck, Jr. individually and d/b/a Luck Properties, L.L.C.
AFFIRMED.