GARRETT, J.
Lin this personal injury case, the plaintiff, Angela Lawrence, appeals from a summary judgment granted in favor of the defendants, Dorothy Dell Sanders and Allstate Insurance Company, and the dismissal of her claims. For the following reasons, we affirm the trial court judgment.
FACTS
The only evidence presented to the trial court in connection with the motion for summary judgment was the deposition of Ms. Lawrence taken on February 19, 2014, which provides the following description of the incident giving rise to this lawsuit. Ms. Lawrence is employed by the office of the Ouachita Clerk of Court as a deputy clerk. She is the granddaughter of Ms. Sanders. On April 15, 2012, Ms. Sanders asked Ms. Lawrence to come to her house, climb up on the roof, and remove limbs and debris. Ms. Lawrence, who was 37 years old at that time, frequently performed this chore for her grandmother. She usually used an extension ladder to get on the roof, but the ladder had been stolen. Ms. Sanders also had an A-frame ladder. This ladder, stored in a shed, had belonged to Ms. Lawrence’s grandfather, who is deceased. According to Ms. Lawrence, she had seen the ladder before and it had been at the house for at least nine years. Ms. Lawrence said she thought they should wait to get an extension ladder. Ms. Sanders was not upset at this suggestion. However, Ms. Lawrence said her grandmother told her to use the A-frame ladder, so she complied. Ms. Sanders remained in the house while Ms. Lawrence proceeded with her Utask.[1] The plaintiffs aunt, who lived at the residence, was in the yard at the time.
The ladder was six feet tall. Ms. Lawrence is five feet four inches tall and the roof was eight to nine feet high. Ms. Lawrence checked the braces on the ladder before going onto the roof. No one held the ladder during her ascent, which was uneventful. After spending 20 minutes cleaning off the roof, she attempted to climb down. As she placed her foot on the top of the ladder, it shifted, causing her to fall to the ground, resulting in injuries.[2]
*793 On April 12, 2013, Ms. Lawrence filed suit against her grandmother and her grandmother’s insurer, Allstate Insurance Company (“Allstate”). She alleged that she was injured due to the dangerous and defective condition of the ladder, that it did not properly stabilize, and that it slipped, causing Ms. Lawrence to fall, resulting in injuries to her wrist, neck and back. Ms. Lawrence asserted that the defendants were negligent in failing to have safe equipment for her use, failing to maintain the equipment in a safe condition, providing faulty and damaged equipment, and any other acts of negligence that might be revealed through discovery.
On April 16, 2014, the defendants filed a motion for summary judgment and included portions of Ms. Lawrence’s deposition. Ms. Lawrence opposed the motion and included other portions of her deposition. LA hearing on the motion for summary judgment was held on July 18, 2014. Both parties introduced Ms. Lawrence’s entire deposition in support of their claims, and this was the only document offered.
In addition to recounting the accident, Ms. Lawrence stated in her deposition that she did not look at the ladder after the accident to determine if it was damaged. She stated that personnel from Allstate looked at it and, “They didn’t say it was damaged or anything.” Ms. Lawrence was asked what she thought caused the ladder to fall. She said “someone not holding it” and her grandmother should have waited until an extension ladder could be obtained. However, she also stated that she did not ask her aunt or her grandmother to hold the ladder. Ms. Lawrence was later asked if she thought her grandmother did anything to cause the accident. She again responded that Ms. Sanders should have waited until Ms. Lawrence could have borrowed an extension ladder from a friend.
At the hearing, the defendants argued that Ms. Lawrence brought a claim under La. C.C. art. 2317.1, the only theory of recovery urged in the petition, and was required to prove that her grandmother knew or should have known of a defect in the ladder, that the damage could have been prevented with the exercise of reasonable care, and that her grandmother faded to exercise reasonable care. She was also required to show that a vice or defect in the ladder constituted a dangerous condition reasonably expected to cause injury to a prudent person with ordinary use. The defendants maintained that there was no showing of any defect in the ladder making it unreasonably dangerous when used with ordinary care. The | ¿defendants claimed that Ms. Lawrence was in the best position to determine if it was unsafe to use the ladder to clean off the roof.
Ms. Lawrence argued for the first time at the hearing that she also presented a negligence claim.[3] According to Ms. Lawrence, the main question was whether Ms. Sanders was negligent in failing to furnish an extension ladder or not having someone hold the A-frame ladder while it was being used. She asserted that a genuine issue of material fact existed as to whether it was unsafe to use the ladder.
*794 The trial court stated that there was no genuine issue of material fact as to either negligence or defect that would afford relief to the plaintiff in this case. Therefore, the court granted summary judgment in favor of the defendants. Ms. Lawrence appealed.
NEGLIGENCE, DEFECT, AND SUMMARY JUDGMENT
Ms. Lawrence raises numerous assignments of error, all essentially urging that the trial court erred in granting summary judgment and dismissing her claims. She argues there are genuine issues of material fact as to whether Ms. Sanders was negligent in failing to hold the ladder after asking Ms. Lawrence to clean off the roof, and in providing a ladder that was inadequate to accomplish the task. She also alleges that a genuine issue of material fact exists as to whether there was a defect or defective condition in the ladder. She claims that the trial court erred in failing to IfiView all reasonable inferences from the evidence submitted in a light most favorable to her, as the nonmoving party on the motion for summary judgment. These arguments are without merit.
Summary Judgment Principles
Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action except those specifically excluded by law. The procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). The judgment sought should be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof in summary judgment proceedings remains with the mov-ant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). See Bufkin v. Felipe’s Louisiana, LLC, 2014-0288 (La.10/15/14), — So.3d -, 2014 WL 5394087; Green v. State Farm Gen. Ins. Co., 35,775 (La.App.2d Cir.4/23/02), 835 So.2d 2.
When a motion for summary judgment is made and supported as provided by law, an adverse party may not rest on mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. See La. C.C.P. art. 967(B); Odom v. Siegel, 48,757 (La.App.2d Cir.1/15/14), 130 So.3d 1024.
Review of a grant or denial of a motion for summary judgment is de novo. Green v. State Farm Gen. Ins. Co., supra.
Negligence Principles
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315. In determining whether to impose liability under La. C.C. art. 2315, *795 Louisiana courts perform a duty-risk analysis to determine whether liability exists under the facts and circumstances of a particular case. Finch v. HRI Lodging, Inc., 49,497 (La.App.2d Cir.11/19/14), 152 So.3d 1039.
Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to an appropriate standard of care; (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries; (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries; and (5) actual damages. |7Failure to prove any of the elements of the duty-risk analysis results in a determination of no liability. Finch v. HRI Lodging, Inc., supra. See also Bufkin v. Felipe’s Louisiana, LLC, supra; Meany v. Meany, 94-0251 (La.7/5/94), 639 So.2d 229; Norton v. Claiborne Elec. Co-op, Inc., 31,-886 (La.App.2d Cir.5/5/99), 732 So.2d 1256, writs denied, 99-1737 (La.10/1/99), 748 So.2d 443, and 99-1823 (La.10/1/99), 748 So.2d 454; Cook v. Depingre, 49,527 (La.App.2d Cir.1/14/15), 161 So.3d 914; Barrow v. Brownell, 2005-1627 (La.App. 1st Cir.6/9/06), 938 So.2d 118.
Duty is defined as the obligation to conform to the standard of conduct associated with a reasonable person in like circumstances. Cook v. Depingre, supra. Under the traditional duty-risk analysis, whether a duty is owed is a question of law. Finch v. HRI Lodging, Inc., supra; Meany v. Meany, supra; Norton v. Claiborne Elec. Co-op, Inc., supra. Because the existence of a duty is a question of law, it may be resolved on summary judgment. Richter v. Provence Royal St. Co., L.L.C., 97-0297 (La.App. 4th Cir.10/8/97), 700 So.2d 1180. The inquiry is whether the plaintiff has any law — statutory, jurisprudential, or arising from general principles of fault — to support her claim. Maw Enterprises, L.L.C. v. City of Marksville, 2014-0090 (La.9/3/14), 149 So.3d 210. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. Finch v. HRI Lodging, Inc., supra; Bonds v. SAPA Extrusions, LLC, 48,760 (La.App.2d Cir.2/26/14), 135 So.3d 799, writ denied, 2014-0667 (La.5/2/14), 138 So.3d 1249.
|SA defendant generally does not have a duty to protect against that which is obvious and apparent. In order for an alleged hazard to be considered obvious and apparent, our courts have consistently stated the hazard should be one that is open and obvious to everyone who may potentially encounter it. Bufkin v. Felipe’s Louisiana, LLC, supra.
Discussion
Ms. Lawrence argued in opposition to the motion for summary judgment that her grandmother was negligent for failing to provide safe and proper equipment to accomplish the task of cleaning the roof and for failing to hold the ladder while Ms. Lawrence got on and off the roof. As argued by the defendants below and before this court on appeal, the facts of Barrow v. Brownell, supra, are very similar to the present case. In Barrow, a handyman fell off a ladder while taking down Christmas lights. The handyman argued that the homeowner insisted that he take down the lights even though he thought it was too cold. The homeowner remained in the house while the handyman worked. The first circuit affirmed the grant of summary judgment in favor of the homeowner and her insurer, finding that she owed no duty to the handyman. The first circuit found that the handyman alone decided when, where and how to do this job and that the *796 accident happened as a result of the manner in which he did the job.
Our initial inquiry is whether Ms. Sanders had a duty to hold the ladder for Ms. Lawrence, or find someone else to hold it, or to provide a different ladder for the task. Ms. Lawrence contends that she was not in control of all aspects of the job, making the present case distinguishable | afrom Barrow. She claims she was instructed by her grandmother to use the ladder after she expressed concerns about it and her grandmother was negligent in failing to hold the ladder or have someone else hold it. Ms. Lawrence’s deposition fails to support her attempts to distinguish this case from Barrow.
Ms. Lawrence stated that, beginning when she was 15 or 16 years old, she annually removed debris from her grandmother’s roof. She had performed this task 20-24 times. Because the extension ladder she routinely used had been stolen, Ms. Sanders told her to use the A-frame ladder. Ms. Lawrence stated that she did not tell her grandmother that she did not want to use the A-frame ladder. She told her grandmother that it would be better if they had an extension ladder. Ms. Lawrence admitted in her deposition that she could have gotten an extension ladder from a friend and that Ms. Sanders was not upset when she suggested waiting to get the ladder.
Ms. Lawrence further contends that her grandmother, who is in her 70s and may have dementia or Alzheimer’s disease, was negligent in failing to hold the ladder or have someone else hold it while Ms. Lawrence used it. However, Ms. Lawrence stated that she never asked anyone to hold the ladder.
The trial court accurately summarized the degree of control that Ms. Lawrence had in the manner in which the task was to be performed, stating:
[T]his woman is reasonably intelligent and if she felt like that the utilization of the ladder itself would not enable her to properly and correctly perform her task of ascending the ladder and getting onto the roof and do the chore of clearing off the debris, then that’s — to me, that’s a conscious choice that she, herself, made based upon the circumstances. Nobody put a gun boto her head and forced her to use this ladder and if the ladder was inappropriate, all she had to say was, you know, “Nana, I’m not going to use this ladder. In fact, I can’t do it today. I’ll come back tomorrow and do it when I got a better ladder that would, you know, enable me to do the task in a better mann — -in a safer manner.”
Ms. Lawrence was required to show that Ms. Sanders owed her a duty. Ms. Sanders asked Ms. Lawrence to do the job and pointed out the only ladder she had. Ms. Lawrence was in a better position than her grandmother to know if the ladder was inadequate or unsafe for the task at hand and whether it was necessary to have someone hold the ladder. She was free to refuse to use a ladder she felt was unsafe and to ask for assistance. Ms. Lawrence decided when, where, and how to do this job. Any hazards in the use of the ladder were obvious and apparent to Ms. Lawrence. Under these circumstances, Ms. Sanders did not owe a duty to Ms. Lawrence. The trial court did not err in granting summary judgment in favor of the defendants, dismissing the negligence claims.
Defect Principles
In her petition, Ms. Lawrence alleged that her injuries were caused by a defect in the ladder. La. C.C. art. 2317 provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of *797 persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
According to La. C.C. art. 2317.1:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of ^reasonable care, and that he failed to exercise such reasonable care.
La. C.C. art. 2317.1, enacted in 1996, effectively abrogated the concept of “strict liability” in cases involving defective things and imposed a negligence standard based on the owner or custodian’s knowledge or constructive knowledge of the defect. Nicholson v. Horseshoe Ent., 46,081 (La.App.2d Cir.3/2/11), 58 So.3d 565, writ denied, 2011-0679 (La.5/20/11), 63 So.3d 980; Shuff v. Brookshire Grocery Co., 45,109 (La.App.2d Cir.3/3/10), 32 So.3d 1030; Hagood v. Brakefield, 35,570 (La.App.2d Cir.1/23/02), 805 So.2d 1230, writ denied, 2002-0557 (La.4/26/02), 815 So.2d 90.[4]
A defect under La. C.C. art. 2317.1 is a condition creating an “unreasonable risk of harm.” The imperfection must pose an unreasonable risk of injury to persons exercising ordinary care and prudence. Nicholson v. Horseshoe Ent., supra. See also Todd v. Angel, 48,687 (La.App.2d Cir.1/15/14), 132 So.3d 453, writ denied, 2014-0613 (La.5/16/14), 139 So.3d 1027.
To recover for damages caused by a defective thing, a plaintiff must prove that the thing was in the defendant’s custody, that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused damage and that the defendant knew or should have known of the defect. La. C.C. art. 2317.1; Todd v. Angel, supra; Odom v. Siegel, supra; Nicholson v. Horseshoe Ent., supra; Ladner v. Trinity Group, Ltd., 45,937 (La.App.2d Cir.2/16/11), 57 So.3d 1197, writ denied, 2011-0580 (La.4/29/11), 62 So.3d 115; Beckham v. Jungle Gym, L.L.C., 45,325 (La.App.2d Cir.5/19/10), 37 So.3d 564.
Discussion
There is no dispute that the ladder was in the custody of Ms. Sanders. However, Ms. Lawrence’s petition contains only the bare allegation that a defect existed in the ladder. In their motion for summary judgment, the defendants contended that there was a lack of proof that the ladder was defective, an essential element of Ms. Lawrence’s claim. In support of their position, they attached Ms. Lawrence’s deposition. In that deposition, she was asked if, before she climbed on the roof, she noticed anything wrong with the ladder or whether it was damaged in any way. Ms. Lawrence said that she did not look at it. She said she checked the braces on the ladder before going on the roof and they were in a secure position. She stated that when she stepped from the ladder onto the roof, she did not have any trouble and the ladder did not “rock or roll” with her. She claimed the ladder was in the same position when she attempted to climb down from the roof. According to Ms. Lawrence, she felt her right foot on the top of the ladder, but she could not tell if it was in the center or to the left or right. When she put her weight on her *798 foot, the ladder shifted to the left, and she and the ladder fell.
Ms. Lawrence stated that, after the accident, she never looked at the ladder to see if it was damaged. In fact, she stated that Allstate looked at the ladder and, “They didn’t say it was damaged or anything.” She was again |, ¡¡asked if, after her fall, she could tell if the ladder was bent or broken in any way. She reiterated that she never looked at the ladder. Ms. Lawrence merely argued, in opposition to the motion for summary judgment, that her grandmother was liable under La. C.C. art. 2317.1, in failing to have safe equipment for her use and failing to maintain the equipment in a safe condition. She also asserted that Ms. Sanders knew that the ladder would not reach the roof and this constituted a vice or defect for this particular job. However, she never provided any proof to support these bare allegations. When asked what she thought caused the accident, Ms. Lawrence did not cite any defect in the ladder. Rather, she opined that the accident was caused by not having someone hold the ladder and in not waiting to get an extension ladder, as discussed above.
Ms. Lawrence claims that the defendants failed to present any evidence to establish that the ladder lacked defects. She insists that this was the defendants’ burden of proof on the motion for summary judgment, and, absent such proof, summary judgment in their favor was not proper. We find that Ms. Lawrence’s view of the respective burdens of proof in a motion for summary judgment is flawed.
Establishing the existence of a defect was an essential element of Ms. Lawrence’s claim. Ms. Lawrence’s deposition establishes that she had no factual support for her claim that the ladder was defective. It then became Ms. Lawrence’s burden to produce factual support sufficient to establish that she could satisfy her burden of proof at trial regarding the existence of a defect in the ladder. She could not rest on the mere allegations in her |upleadings, but was required to respond by affidavits, or as otherwise provided by law, and set forth specific facts showing that there is a genuine issue for trial. She failed to do so, but instead continued to rely on the bare allegations of her pleadings.
Although not alleged in her petition, Ms. Lawrence argues that the ladder was too short for the job and this somehow constituted a defect under the law. As set forth above, to constitute a defect, the imperfection must pose an unreasonable risk of injury to persons exercising ordinary care and prudence. Under this definition, the height of the ladder was not a defect. Ms. Lawrence was able to use the ladder to safely climb onto the roof. Even assuming for the sake of argument that this could be a defect, Ms. Lawrence failed to show that Ms. Sanders knew or should have known of this alleged defect. The elderly grandmother remained in the house while Ms. Lawrence climbed onto the roof. Ms. Lawrence was certainly in the better position to make an assessment as to the suitability of the ladder to perform the task involved.
Because the plaintiff failed to allege any specific defect in the ladder, failed to support her allegations that a defect existed, actually stated in her deposition that she never examined the ladder, and did not show that Ms. Sanders knew or should have known of any alleged defect, the trial court did not err in finding that summary judgment should be rendered against Ms. Lawrence on this issue.[5]
*799 ^INFERENCES FROM THE EVIDENCE
Ms. Lawrence contends that the trial court erred in failing to view reasonable inferences from the evidence submitted in the light most favorable to her, as the nonmoving party in the motion for summary judgment, and that all doubts should be resolved in the nonmoving party’s favor. She cites Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764, in support of her argument.
Discussion
The record does not support the argument by Ms. Lawrence that the trial court erred in its application of the burden of proof for summary judgment. Ms. Lawrence complains of two instances that occurred during the hearing on the motion for summary judgment. The first happened when she asserted that there was a lack of evidence in the record showing that there were no defects in the ladder; she claims the trial court stated it did not need an expert to tell if an A-frame ladder lacked defects. The second [^instance occurred when her attorney asked the court what evidence the defendants had put in and the court stated, “both direct and circumstantial.”
Ms. Lawrence has not provided the full exchange between her attorney and the trial court. A review of that exchange in its entirety reveals that Ms. Lawrence’s attorney was mistaken regarding the burden of proof on the motion for summary judgment and the trial court was pointing out that error. The following exchange took place:
[Court]: What evidence do you — do you contend that they needed to bring into this Court other than that which has been placed in the record?
[Plaintiffs attorney]: I would — had they had someone who had inspected the ladder and put an affidavit in and said, “I’ve inspected the ladder; I found it functioning properly with no defects,” that might be — that would be different and I would have to bring something up *800 to say — to dispute that. I think that would — had that happened in this case— had that been in this Motion for Summary Judgment, the Court would be correct because they brought evidence that there is no defect.
[Court]: What about the deposition testimony—
[Plaintiffs Attorney]: Again, the deposition testimony—
[Court]: — that the ladder was an A-frame ladder, that the ladder was properly place, that the ladder was used properly to ascend, no problems. What about that? That’s not something that I can consider?
[Plaintiffs Attorney]: You can look at it. But again, Your Honor—
[Court]: I don’t need an expert to tell me if an A-frame ladder has no defects, apparently no obvious defects, none which was observable by the user in ascending to access the roof and none that, thus far, I’ve been shown by you to show that there were any defects. I don’t need an expert to come in and tell me that the ladder was not defective. If the clear evidence in the record shows— [Plaintiffs Attorney]: Okay. Well Judge, I’m just—
_Jj¿[Court]: — that it wasn’t defective.
The trial court pointed out that the plaintiff alleged in her petition that there was a dangerous and defective condition of the ladder, that it did not properly stabilize, and it slipped, causing the plaintiff to fall. However, the plaintiff presented nothing to prove any defect in the ladder caused her harm. The trial court stated that the law was clear that, when faced with a motion for summary judgment assailing the contention that the ladder was defective and posed an unreasonable risk of harm, the plaintiff was required to provide some proof of the defect. The plaintiffs counsel argued that the defendants merely alleged a lack of a defect, but did not provide any proof of that claim. Therefore, the plaintiff asserted that she was not required to offer any proof of a defect. The court replied as follows:
[Court]: Mr. Donald, I cannot believe that you are standing her[e] flat-footed and in good conscience arguing that you don’t have to — when they attack that element of your case and say that the ladder is not defective that you don’t have to respond by showing that it is defective in order to carry your burden of proof.
[Plaintiffs attorney]: If — if they—
[Court]: How can you in good conscience and intellectual honesty advance that theory?
[Plaintiffs attorney]: Had they put some evi—
[Court]: I don’t — I don’t — I don’t understand that.
[Plaintiffs attorney]: Had they put some evidence in, I’d agree.
[Court]: They have. They have put some evidence in—
[Plaintiffs attorney]: Where?
[Court]: — Mr. Donald.
11s[Plaintiffs attorney]: Where, Your Honor? Where?
[Court]: In the dadgum deposition of your client, Ms. Lawrence.
[[Image here]]
[Plaintiffs attorney]: What evidence?
[Court]: Both direct and circumstantial in this Court’s view.
Noting that the plaintiff stated in her deposition that she did not observe any defects in the ladder prior to using it, the court reasoned that, if the ladder had been defective, the plaintiff would have said so in her deposition.
As fully set forth above, the only document offered by the parties to support or *801 oppose the motion for summary judgment was Ms. Lawrence’s deposition, in which she.stated that she never observed any defects in the ladder and that personnel with Allstate examined it after the accident and did not say they found any problem with it. The trial court did not weigh the evidence or make credibility determinations in deciding this motion for summary judgment. There were no reasonable inferences to be drawn from the record or doubts to be resolved in the nonmoving party’s favor. The trial court did not err in finding that the plaintiff failed to show that there were genuine issues of material fact precluding the grant of summary judgment. The trial court correctly granted summary judgment in favor of the defendants, dismissing the plaintiff’s claims against them.
CONCLUSION
For the reasons stated above, we affirm the trial court ruling granting summary judgment in favor of the defendants, Dorothy Dell Sanders and 11flAllstate Insurance Company, dismissing the claims of the plaintiff, Angela Lawrence. All costs in this court are assessed to the plaintiff.
AFFIRMED.

. In her deposition, Ms. Lawrence was asked if her grandmother had Alzheimer’s disease or dementia. Ms. Lawrence stated that she could be in the early stages, but she did not know if her grandmother had been diagnosed. At the time of the deposition, Ms. Lawrence said that her grandmother was 76 or 77 years old.

. In Ms. Lawrence’s petition, she alleged that, in order to reach the roof, "your petitioner propped a ladder provided by Defendant against the eave of the roof and climbed said ladder; when your petitioner began to step off the ladder onto the roof, the ladder slipped and petitioner fell from the roof to the ground, landing on her right side.” The allegations in the petition are markedly different *793 from the version of the accident related by Ms. Lawrence in her deposition.

. In her petition, Ms. Lawrence included a catch-all phrase that her injuries were caused by "any other acts of negligence found during discovery.” Her allegations regarding failure to hold the ladder appear to be an attempt to include a claim for negligence under La. C.C. art. 2315. We note that the defendants did not raise any objection to this argument, which was not included in the plaintiff's petition.

. As noted in Jackson v. Brumfield, 2009-2142 (La.App. 1st Cir.6/11/10), 40 So.3d 1242, a more appropriate term for liability under La. C.C. arts 2317 and 2317.1 might be "custodial liability,” but such liability is nevertheless predicated upon a finding of negligence.

. The jurisprudence contains numerous cases dealing with the liability of property owners when individuals fell from ladders on their property. See Howard v. Hartford Acc. & *799 Indem. Co., 208 So.2d 542 (La.App. 3d Cir.1968), where a homeowner was not liable because there was no defect in the ladder and the accident was the result of the worker’s own negligence; Schrader v. State Farm Fire & Cos. Ins. Co., 571 So.2d 218 (La.App. 3d Cir.1990), writ denied, 575 So.2d 370 (La.1991), where a homeowner had no duty to protect friend from observable and normal risk of using a ladder and injured party asked homeowner not to hold the ladder while she was standing on it; Stanford v. State Farm Bureau Cas. Ins. Co., 512 So.2d 553 (La.App. 3d Cir.1987), writ denied, 513 So.2d 294 (La.1987), where a homeowner had no duty to protect against the danger of using a ladder where the plaintiff was familiar with this type of ladder, was the “sole determiner” of the placement of the ladder against the house, and knew or should have known of the danger of not properly positioning the ladder; Fisher v. Gulf Coast Rheumatology Associates, 2006-1246 (La.App. 1st Cir.5/4/07), 2007 WL 1300812, where summary judgment was granted in favor of the defendants where the plaintiff failed to establish that the ladder had a defect which created an unreasonable risk of harm, that the defendants knew or should have known of the defect, or that the defect caused the plaintiff's injuries; Green v. State Farm Gen. Ins. Co., supra, where summary judgment was granted in favor of the defendants because the plaintiff failed to show any defect in the ladder and the court also rejected the argument that the homeowner was negligent in causing the fall because he left the premises instead of staying to hold the ladder; Rainey v. Steele, 2010-2154 (La.App. 1st Cir.8/17/11), 2011 WL 3629360, writ denied, 2011-2013 (La.11/18/11), 75 So.3d 466, where summary judgment was granted in favor of defendants where plaintiff fell from ladder while painting an office. In Rainey, the plaintiff determined where to place the ladder, the defendants did not supervise or direct the work, and the defendants neither knew nor should have known that the carpet was loose where the plaintiff placed the ladder.