Judgment rendered December 18, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,011-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| MARIA MICKENS GREEN, INDIVIDUALLY AND AS THE NATURAL TUTRIX OF THE MINORS, JOSHUA EVANS, MAKIYA MICKENS, VERNON EVANS, JR., MAKAYLA EVANS and BRAXTON EVANS | Plaintiffs-Appellants |

versus

| | |
|---|---|
| EAST CARROLL PARISH SCHOOL DISTRICT/BOARD | Defendant-Appellee |

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of East Carroll, Louisiana
Trial Court No. 22,766

Honorable Laurie R. Brister, Judge

* * * * *

| | |
|---|---|
| THE RAYMOND LEE CANNON LAW FIRM By: Raymond Lee Cannon | Counsel for Appellants |
| HAMMONDS, SILLS, ADKINS, GUICE, NOAH & PERKINS, LLP By: Linda Kay Ewbank | Counsel for Appellee |

* * * * *

Before STONE, ROBINSON, and MARCOTTE, JJ.

**MARCOTTE, J.**

This appeal arises from the Sixth Judicial District Court, Parish of East Carroll, the Honorable Laurie R. Brister presiding. Plaintiffs appeal the trial court's granting summary judgment in favor of the defendant-school board, thereby dismissing plaintiffs' claims related to a fall the plaintiff-mother suffered when transporting her disabled child from her car to school. For the following reasons, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

The following facts are taken, in part, from a prior appeal in this matter, *Green v. E. Carroll Parish Sch. Dist./Bd.*, 54,910 (La. App. 2 Cir. 3/1/23), 357 So. 3d 541, *writ granted and rev'd*, 23-00466 (La. 5/23/23), 360 So. 3d 833.

Maria Mickens Green ("Green") filed a lawsuit following an incident that occurred while dropping her son, Joshua Evans ("Joshua"), off at school. Joshua, an 11-year-old 6th grader at the time of the incident, attended Griffin Middle Academy (the "school") in Lake Providence, Louisiana. Joshua has cerebral palsy and uses a wheelchair. Because of his disability, Joshua received an Individualized Education Program ("IEP") plan through the Louisiana Department of Education. Joshua's IEP provided that he receive "Special Transportation," and noted that he rode a special services school bus equipped with a wheelchair lift, which the East Carroll Parish School District/Board (the "school board") provided.

On September 6, 2016, Green arrived at the school in her personal vehicle to drop her five children off at school, including Joshua. The school

board's special services bus did not pick Joshua up for school that day because the wheelchair lift was malfunctioning. Green claimed that she was not contacted by anyone from the school to let her know beforehand that Joshua could not be picked up. The school board disputed that assertion and claimed it did inform her of the problems with the bus that morning.

Green maintained that she only transported Joshua and her other children to school herself because the lift was broken and he could not ride the bus. Upon arrival at the school, Green exited her vehicle, removed Joshua's wheelchair from the vehicle, and set it up for him. While Green was lifting Joshua to transition him into his wheelchair, she alleged she fell backward onto the ground, with Joshua falling on top of her, causing her and her son injuries.

On August 28, 2017, Green filed a petition, individually, and on behalf of her five children, against the school board. Green alleged that her fall in the parking lot at the school was caused solely by the fault and negligence of the school board, in that it: (1) failed to provide the safe and required transportation for Joshua; (2) failed to provide appropriate services and education for Joshua; (3) failed to provide the appropriate assistance and planning for Joshua's transportation to and from school; and (4) failed to abide by state law and regulations applicable to the education and assistive services for Joshua. Green claimed that, because of the school board's negligence, she and Joshua sustained bodily injuries and incurred medical expenses. Green also asserted loss of consortium claims on behalf of her four other children.

The school board filed a motion for summary judgment, in which it argued that it did not cause Green's injuries that resulted from her fall. The school board noted several material facts that were not in dispute. The school board asserted that Green regularly transported her son and her other children to and from school. The school board permitted Green to drop off Joshua and her other children at the front of the school, as opposed to the side of the school where other students were dropped off. On the day of her fall, by her own admission, Green was tired and in a hurry, and she did not seek assistance from any school board employee to help her with unloading Joshua from her vehicle.

About the special services bus, the school board admitted that the wheelchair lift was inoperable that day, which was discovered during a daily safety check. Therefore, rather than breach its duty to provide safe transportation for Joshua, the bus did not pick him up. The school board noted that the bus was new, and the issues with the wheelchair lift were not anticipated. The school board asserted that Green did not inform the Special Education Director, Pat Roberson ("Roberson"), or any other employee at the school that she was unable to transport Joshua to school when the lift was not operational.

The school board argued that Green's fall was not due to a premises defect or any condition at the school. At her deposition, Green testified she was tired and in a hurry on the morning of her fall, and she did not identify a defect or dangerous condition on the school property that caused her to fall. Further, the school board argued that Green's fall was not caused by its inability to provide transportation on the bus for Joshua that morning. The

school board contended that its duty to provide transportation to Joshua did not include an obligation to protect against the risk that Green might lose her balance and fall while she hurried to deliver her children to school. The school board argued that the duty imposed by the school board's obligation to provide transportation to Joshua did not extend to Green to protect her from a personal injury. The school board maintained that the risk of injury to Green and Joshua was attenuated and not foreseeable.

Green filed an opposition to the motion for summary judgment, which included an objection to the motion for summary judgment based on untimely service. With her opposition memorandum, Green included Joshua's IEP, as well as deposition testimony from school board employees, including Roberson, and acting superintendent, Megan Brown ("Brown"). Green argued the IEP afforded Joshua special transportation services, specifically a bus equipped with a wheelchair lift. She argued that the lift was used to prevent falls and injuries to Joshua and aides or helpers.

Green contended that the IEP did not state that the school board was to provide Joshua with a homebound teacher for a nonmedical reason when the special services bus did not transport him to school, which contradicted the deposition testimony of the school board employees. Green also argued that the IEP did not specify that Joshua would receive an excused absence for the day in the event she could not transport him to school due to the bus not running. Green implied those considerations were instrumental to her decision to transport Joshua to school that day.

Following a hearing, the trial court signed a judgment granting summary judgment and dismissing plaintiffs' claims with prejudice.

Plaintiffs appealed, and this court affirmed the trial court's judgment. *Id.* Plaintiffs appealed to the Louisiana Supreme Court. The supreme court found that the school board's motion for summary judgment was not timely served, and reversed this court and the trial court. The supreme court remanded the matter to the trial court. *Green v. E. Carroll Parish Sch. Dist./Bd.*, 23-00466 (La. 5/23/23), 360 So. 3d 833.

On August 11, 2023, the school board filed a second motion for summary judgment. The school board made similar arguments to its first motion, mainly that it did not owe a duty to Green to prevent her from sustaining an injury while transporting her children to school, that her injuries were not reasonably foreseeable, that there was no ease of association between the risk that she would fall and the school board's legal duty, and that there were no material facts in dispute. The school board contended that Joshua's IEP required that bus aides be present on the bus to assist him when he rode the bus. The school board said that aides did not assist students or their parents when they traveled in private vehicles. The school board asserted that an aide's role did not include preventing falls by parents in the school parking lot. Defendant asked that its motion be granted, and plaintiffs' claims be dismissed with prejudice.

The school board attached the same exhibits to its second motion as it did to its prior motion and added the deposition testimony of Umika Tanee Hawkins ("Hawkins"), the bus aide for the special services bus. Hawkins said she informed Green on a date prior to her accident that the bus lift was inoperable and she told Green, prior to September 6, 2016, that she would let her know when the lift was working again. She later clarified that she did

not call Green to tell her that the bus was inoperable on the date of her accident. Hawkins stated that she was not trained in transporting a special needs student from a vehicle to a wheelchair.

Plaintiffs opposed the motion for summary judgment and made similar arguments to their opposition to defendant's first motion. They argued in addition that: (1) the school board was required to provide Joshua with transportation to school; (2) it was foreseeable that his mother would be tired and in a hurry given that she was required to transport him to school; (3) there was an ease of association between the lack of an operable lift on the bus and aides to assist Green and Joshua and her falling; (4) there were two aides at the school assigned to assist Joshua, but on the day of the accident they did not; and (5) the school board appointed someone to help Green get Joshua out of her vehicle and into the school building, but they failed to do so at the time of the accident. Plaintiffs stated that, had the school board called Green on the date of her accident to inform her that Joshua was not required to be at school, the accident would not have occurred.

Plaintiffs included affidavits from Green and her mother and included excerpts from deposition testimony from people who worked at Joshua's school, including Madlyn Matthews ("Matthews"), Joseph Shaw ("Shaw"), and Muriel Williams ("Williams"). Matthews, whose role at the school was not identified, testified that there was an aide who traveled from another school to help Joshua when he was at school. Williams, the principal at Joshua's school, said that aides were furnished to assist Joshua. Shaw, the school's resource officer, said that he did not assist Joshua in getting him to

school. When asked, "But what about you getting him … out of her vehicle or from the bus if the bus had come with a lift," Shaw responded, "No. They had someone appointed for that."

Plaintiffs filed a supplemental opposition to the motion for summary judgment stating that the school board did not have a policy which prevented school employees from transporting a child from a private vehicle to a wheelchair. Plaintiffs attached excerpts of deposition testimony purportedly from Kendall Thompson ("Thompson"), who appeared to oversee the buses for the school board but was not employed in that role when Green had her accident. Thompson stated that he had not heard of the school board having such a policy.

The school board filed a reply stating that plaintiffs were unable to prove that: (1) the lack of school bus transportation was the cause-in-fact of Green's fall; (2) there was no school board policy, law, or requirement in Joshua's IEP that obligated school employees to assist Joshua into or out of his mother's vehicle; (3) Green never requested that the school board provide an assistant for Joshua when getting into or out of Green's vehicle; and (4) the school board had no duty to prevent Green from injuring herself when she transported Joshua to school.

Following argument, on December 5, 2023, the trial court provided its oral reasons for judgment. The trial court listed the following facts as material:

> (1) On September 6, 2016, Green fell while unloading Joshua, her disabled son, from her vehicle.

> (2) Joshua was unable to ride the special services bus that normally transported him to school because the lift was broken.

(3) Green decided to transport Joshua to school in her own vehicle.

(4) Green testified that on that day she was in a hurry and tired.

(5) Green did not allege any other hazard or reason that contributed to her fall.

(6) Green had loaded and unloaded Joshua from her vehicle at numerous times and locations.

(7) The school board permitted Green to unload Joshua at the front of the school as opposed to the side of the school where other parents dropped off their children.

(8) The special services bus was checked every day for safety and could not pick up Joshua when the lift did not work.

(9) Joshua had an IEP.

(10) His IEP did not provide any assistance for him when his mother transported him by private vehicle.

(11) Green did not request education assistance in her home for Joshua on the date of the accident or any other day that the bus was not operational. Such services were provided prior to the incident.

The trial court then listed the disputed facts: (1) whether Green was notified on the date of her accident that Joshua's bus was not running; (2) whether Green was told that Joshua would be marked absent if he did not attend school that day; and (3) whether there were aides present to assist Joshua in unloading from his mother's vehicle. The trial court stated that the disputed facts were not material and did not support plaintiffs' claims.

The trial court stated that the school board had a legal duty to provide Joshua with transportation to school. The court noted that Roberson and Brown testified that if Joshua had not been at school that day, the school board would have provided homebound services, and he would not have been marked as absent. The trial court said that the school board could not have foreseen that Green would choose to take her son to school that day, be

8

in a hurry to unload him, be tired, not ask for help in the unloading, and fall and injure them both.

The court said that the risk of Green's falling was not in the scope of the school board's duty to provide transportation to Joshua. The trial court acknowledged that the school board had a duty regarding special needs students. The court stated that the law was not intended to extend the duty to Green falling, especially when there were no allegations of any defect in the parking lot that would have contributed to her fall, which was within the control of the school board to correct. The trial court noted that Joshua's IEP regarding his transportation did not extend to Green transporting him in her private vehicle and said that the reason Green fell was due to her own haste and negligence. The trial court granted the school board's motion for summary judgment and dismissed plaintiffs' claims. On January 12, 2024, the trial court signed a judgment granting the school board's motion for summary judgment and dismissing plaintiffs' claims with prejudice. Plaintiffs were assessed with costs. Plaintiffs now appeal.

## DISCUSSION

Appellants assign the following errors on appeal:

> (1) The trial court erred in granting the school board's motion for summary judgment because it owed a duty as a matter of law, and factual or credibility disputes remain in the case.

> (2) The trial court erred in granting the school board's motion for summary judgment because there remain genuine issues of material fact about whether it was foreseeable that the mother of a disabled child would fall with the child when she was tired and in a hurry to get the child to school, when there was conflicting evidence about whether the mother was told to bring her child to school because the lift on the special needs bus was inoperable.

> (3) The trial court erred in dismissing the disabled child's personal injury claims.

(4) The trial court erred in determining that the suit is not about whether the school board violated the law regarding disabled children and providing access to transportation and aides.

(5) The trial court erred in finding that the school board owed no legal duty to the mother of the disabled child to assist her in getting her child out of her vehicle and into the school building when the lift on the special needs school bus did not work.

(6) The trial court exceeded its legal authority by granting summary judgment contrary to La. C.C.P. art. 967(B) because the deposition testimony showed that there were genuine issues of material fact to be resolved at trial.

(7) The trial court erred when it found that the disabled child's mother was not within the class of persons protected from the unreasonable risk of persons falling while getting her student-child into the school building.

(8) The trial court erred in requiring that plaintiffs pay court costs.

We first consider appellants' assignments of error one through seven. Appellants do not brief each assignment of error individually. The gist of their argument is that the disputed facts that the trial court listed in its reasons for judgment are material facts, and that if the school board had informed Green on the date of her accident that the bus was inoperable and Joshua was not required to come to school that day, their injuries would not have happened. Appellants contend that the school board agreed, in Joshua's IEP, to provide him with special needs transportation and that Green was a necessary party to the implementation of his IEP. Appellants ask this court to reverse the trial court's judgment.

Appellants assert that defendant owed a duty to Joshua and Green to provide education services which would have prevented the unreasonable risk of harm to them both. Appellants claim that the school board voluntarily assumed a duty regarding plaintiffs' claims, but they do not state which duty the school board voluntarily assumed.

10

Appellee states that appellants' arguments relate to facts that are not material to their claims and that its legal duty to provide Joshua with transportation to and from school did not encompass the risk that an intervening action may have occurred that caused an injury to Green and Joshua. The school board maintains that the plaintiffs' injuries were caused by Green's negligence when transporting Joshua to school in her private vehicle. The school board contends that it could not have reasonably anticipated that Green would fall while unloading her son from her personal vehicle, when the school bus was unable to pick him up.

The school board also points out that plaintiffs' underlying claims were for damages related to a fall, and not for damages due to the school board failing to provide transportation for Joshua or for failing to correct a premises defect. The school board states that it is not an insurer against every risk of harm encountered in connection with its duty to provide transportation to students.

The school board further points out that Green did not request assistance in removing Joshua from her vehicle on the days that she drove him to school in her car; she also never requested that Joshua's IEP require such assistance. The school board states that Joshua's IEP, which plaintiffs attached to their opposition, was the result of a meeting which occurred after Green's accident; the post-accident IEP made no mention of any request for additional transportation assistance. Appellee asks that this court affirm the trial court's judgment.

*Motion for Summary Judgment*

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief sought by a litigant. *Murphy v. Savannah*, 18-0991 (La. 5/8/19), 282 So. 3d 1034; *Watts v. Party Cent. Family Fun Ctr.*, 54,171 (La. App. 2 Cir. 1/12/22), 332 So. 3d 1279, *writ denied*, 22-00279 (La. 4/12/22), 336 So. 3d 81. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of civil actions (except for certain domestic matters) and is favored by our law. La. C.C.P. art. 966(A)(2); *Watts v. Party Cent. Family Fun Ctr., supra*. A court must grant a motion for summary judgment if, after an opportunity for adequate discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); *Murphy v. Savannah, supra*.

A defendant moving for summary judgment has the burden of pointing out to the court that there is an absence of factual support for one or more elements essential to the plaintiff's claim. Thereafter, if the plaintiff fails to produce factual support to establish that she will be able to satisfy her evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(D)(1); *Gifford v. Arrington*, 14-2058 (La. 11/26/14), 153 So. 3d 999.

Appellate review of a summary judgment is *de novo*, with the appellate court using the same criteria that governed the trial court's determination, i.e., whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Murphy v.*

*Savannah*, *supra*; *Staten v. Glenwood Reg'l Med. Ctr.*, 53,220 (La. App. 2 Cir. 1/29/20), 290 So. 3d 280, *writ denied*, 20-00591 (La. 9/23/20), 301 So. 3d 1184.

The purpose of the motion for summary judgment is to weed out those cases where it is obvious that the evidence, even if accepted as true, is insufficient to establish an essential element of a party's case. *Johnson v. Entergy Corp.*, 36,323 (La. App. 2 Cir. 9/20/02), 827 So. 2d 1234. Therefore, irrespective of the legislature's mandate that summary judgments are now favored, the trial court cannot make credibility determinations when considering such motions. *Id.* The court should draw those inferences from the undisputed facts which are most favorable to the party opposing the motion for summary judgment because summary judgments deprive the litigants of the opportunity to present their evidence to a jury and should be granted only when the evidence attached to the motion establishes that there is no genuine issue of material fact in dispute. *Indep. Fire Ins. Co. v. Sunbeam Corp.,* 99-2181, 99-2257 (La. 2/29/00), 755 So. 2d 226; *Johnson v. Entergy Corp*, *supra.*

*Duty-Risk Analysis*

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315. In determining whether to impose liability under La. C.C. art. 2315, Louisiana courts perform a duty-risk analysis to determine whether liability exists under the facts and circumstances of a particular case. *Farrell v. Circle K Stores, Inc.*, 22-00849 (La. 3/17/23), 359 So. 3d 467; *Finch v. HRI Lodging, Inc.*, 49,497 (La. App. 2 Cir. 11/19/14), 152 So. 3d 1039.

Under the duty/risk analysis, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element). *Farrell v. Circle K Stores, Inc.*, *supra*; *Lawrence v. Sanders*, 49,966 (La. App. 2 Cir. 6/24/15), 169 So. 3d 790, *writ denied*, 15-1450 (La. 10/23/15), 179 So. 3d 601.

Duty is defined as the obligation to conform to the standard of conduct associated with a reasonable person in like circumstances. *Id.* Under the traditional duty-risk analysis, whether a duty is owed is a question of law. *Meany v. Meany*, 94-0251 (La. 7/5/94), 639 So. 2d 229; *Finch v. HRI Lodging, Inc., supra*. Because the existence of a duty is a question of law, it may be resolved on summary judgment. *Lawrence v. Sanders*, *supra*. The inquiry is whether the plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support her claim. *Maw Enters., L.L.C. v. City of Marksville*, 14-0090 (La. 9/3/14), 149 So. 3d 210; *Lawrence v. Sanders*, *supra*.

In deciding whether to impose a duty in a particular case, the court must make a policy decision considering the unique facts and circumstances presented. *Finch v. HRI Lodging, Inc.*, *supra; Lawrence v. Sanders*, *supra*. The Louisiana Supreme Court said, in *Meany v. Meany*, *supra* at p. 6, 639

14

So. 2d at 233, about determining whether to impose a duty in a particular case:

> [T]he court may consider various moral, social, and economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiff's harm and the defendant's conduct; the economic impact on society as well as the economic impact on similarly situated parties; the nature of the defendant's activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving.

The Louisiana Supreme Court, in *Roberts v. Benoit*, 605 So. 2d 1032, 1045 (La. 1991), also stated the following regarding the duty-risk analysis:

> In determining the limitation to be placed on liability for a defendant's substandard conduct—i.e., whether there is a duty-risk relationship—we have found the proper inquiry to be how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Restated, the ease of association inquiry is simply: how easily does one associate the plaintiff's complained-of harm with the defendant's conduct? Although ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone. Absent an ease of association between the duty breached and the damages sustained, we have found legal fault lacking (internal citations omitted).

The trial court did not err in granting summary judgment in favor of the defendant-school board. Green is unable to prove that the school board's conduct was the cause-in-fact of the injuries that she and Joshua sustained. While the school board had a legal duty to provide Joshua with safe transportation to school, under the guidelines of his IEP, that duty did not extend to his mother transporting him to school. Green argues that she was required to convey Joshua to school when the wheelchair lift on the bus was inoperable. On the day of the accident, the lift was malfunctioning, which was unexpected and was discovered during a daily safety check; the school board determined it could not safely transport Joshua to school if the lift was not working.

School personnel testified that, if the lift was inoperable, the school board would have sent a teacher to Joshua's home, and he would not have been marked as absent. Nothing in the record shows that Green utilized that service on the date of the accident. Instead, she chose to take Joshua to school in her personal vehicle. Joshua's IEP did not provide assistance if Green elected to convey her son to school herself. The school board did not owe her a duty to prevent her from falling while transporting her son, and her falling while transporting him was not foreseeable. By her own admission, Green was tired and in a rush when she attempted to transport Joshua from her vehicle to his wheelchair. That was the cause of their injuries. As the trial court noted, plaintiffs did not allege any premises defect, which would have been within the school board's power to correct.

We must also consider the scope of the school board's duty and whether there was an ease of association between its duty to provide Joshua with transportation to school and Green falling while transitioning her son from her car to his wheelchair. Green's injuries are too attenuated from the school board's duty under Joshua's IEP. The risk of Green falling was not within the scope of the school board's duty to provide Joshua with transportation. The school board was not liable for Green's fall; therefore, it cannot be found liable for Joshua's injuries that resulted from his mother's fall, which was due to her own negligence. Appellants' first seven assignments of error have no merit.

*Costs*

We next consider appellants' final assignment of error about the imposition of court costs. Appellants state that court costs were initially

waived in Green's case. Citing La. C.C.P. art. 2164, appellants "suggest that it is legal and equitable to tax all court costs" to the school board. Appellee counters that appellants have offered no argument as to why the assessment of court costs against them would be an abuse of discretion, illegal, or inequitable. The school board argues that it prevailed in this case, and it was proper that costs be assessed to plaintiffs.

Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La. C.C.P. art. 1920. The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court. While it is the general rule that the party cast in judgment should be taxed with costs, the trial court may assess costs in any equitable manner and against any party in any proportion it deems equitable, even against the party prevailing on the merits. *Saunders v. Hollis*, 44,490 (La. App. 2 Cir. 8/19/09), 17 So. 3d 482, *writ denied*, 09-2221 (La. 12/18/09), 23 So. 3d 945.

On review, a trial court's assessment of costs can be reversed only upon a showing of abuse of discretion. *Spencer v. Red River Lodging,* 37,930 (La. App. 2 Cir. 2/5/04), 865 So. 2d 337.

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable. La. C.C.P. art. 2164.

17

In the instant case, the trial court allocated costs to plaintiffs as defendant prevailed with its motion for summary judgment. The trial court can assess costs based on its discretionary authority alone. *Saunders v. Hollis*, *supra*. We cannot say that the trial court abused its discretion in the assessment of costs in this matter. Because we are affirming the trial court's judgment, we find it appropriate and equitable to assess costs of the appeal to appellants.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellants.

**AFFIRMED.**